Marie POWELL, Plaintiff–Appellant,

v.

NATIONAL BOARD OF MEDICAL EXAMINERS, University of Connecticut School of Medicine, Bruce M. Koeppen, Defendants–Appellees.

Docket No. 02–9385.

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 2003.

Decided April 7, 2004.

Aaron David Frishberg, New York, New York, for Plaintiff–Appellant.

Albert Zakarian, Hartford, Connecticut (Jennifer L. Sachs, Day, Berry & Howard, LLP, Hartford, Connecticut, of counsel), for Defendant–Appellee National Board of Medical Examiners.

Jane D. Comerford, Assistant Attorney General, University of Connecticut Health Center, Farmington, Connecticut (Richard Blumenthal, Attorney General, Hartford, Connecticut, of counsel), for Defendants–Appellees University of Connecticut School of Medicine, and Bruce M. Koeppen.

Before: WALKER, Chief Judge, NEWMAN, and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge.

Plaintiff Marie Powell (plaintiff or appellant) appeals from a judgment of the United States District Court for the District of Connecticut (Thompson, J.) entered October 7, 2002, granting motions for summary judgment made by defendants the National Board of Medical Examiners (National Board), the University of Connecticut School of Medicine, and Bruce M. Koeppen, M.D., its academic dean (collectively, UConn or school). In two complaints, plaintiff alleges that defendants discriminated against her based on her alleged disability in contravention of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (ADA), and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* (Rehabilitation Act). Plaintiff contends UConn discriminated against her when it required that she pass the United States Medical Licensing Examination (licensing examination) administered by the National Board in order to continue into the third year of the school's medical program. She asserts further that the National Board discriminated against her when it refused her application for an accommodation on the examination. Several state law claims were also alleged in plaintiff's complaints, but the grant of summary judgment to defendants on these claims is not appealed.

Plaintiff is a young woman now in her 30's who 12 years ago matriculated at medical school where, after completing two years of course work, she experienced difficulties in passing the licensing examination required by the defendant medical school and administered nationally by the defendant testing service. After twice failing the licensing examination, plaintiff asked for an accommodation of more time to take it on the grounds that she had a learning disability. That request was denied and plaintiff took the test and failed it

for the third time, and later was dismissed from medical school, prompting the litigation now before us on appeal.

To decide an appeal where what is involved is right versus wrong is not difficult; but where, as here, neither party has acted wrongfully, to make a just determination between the parties is difficult. A review of the record reveals plaintiff's perseverance and dedication to her studies and also reveals defendant school of medicine's truly extraordinary efforts to help plaintiff succeed. Applying the relevant legal standards, we affirm the grant of summary judgment in defendants' favor.

## BACKGROUND

### A. *Plaintiff's Medical School History*

Powell enrolled in UConn's medical program in August 1992. She was discontinued as a student in 1997. At the time of her enrollment the school was unaware that plaintiff allegedly suffered from a disability. Of the 11 courses she took that made up the first-year curriculum, Powell was deficient in two of them. The first-year courses are referred to as Basic Medical Sciences I (BMS–I). After successfully completing remedial work with respect to one of the courses, plaintiff was promoted to the second-year curriculum, referred to as Basic Medical Sciences II (BMS–II). In her second year, Powell was deficient in four out of ten courses, resulting in the award of an unsatisfactory grade for BMS–II. In addition, in June 1994 Powell failed Step I of the United States Medical Licensing Examination.

Developed and administered by the defendant National Board, a private, nonprofit corporation, the medical licensing examination is a comprehensive test. It is composed of three parts, or steps, and most medical schools in the United States require their students to pass Step I before advancing to the third-year medical school curriculum. Further, in all United States jurisdictions, passage of all three steps of the medical licensing examination is mandated in order to satisfy state licensing requirements to become a doctor. Step I, the part at issue in this case, is designed to assess a medical student's ability to apply the concepts, knowledge and principles that make up the fundamentals of patient care.

The 1992–93 UConn student handbook states that at the end of each of the first two years students are required to take a comprehensive examination, and that taking Step I fulfills the second-year requirement. The handbook further provides that the school may place conditions for promotion on a student who receives an unsatisfactory in BMS–II, including retaking and passing Step I. UConn stated that two to five students per year are asked to obtain a passing score on Step I as a condition for promotion to the third-year medical school curriculum.

In June 1994 plaintiff was informed by the Promotions Committee that in order to convert her BMS–II grade to satisfactory, and thus be eligible to begin the third year, she needed to pass Step I and remediate three of her course deficiencies. For two years—from June 1994 until June 1996—plaintiff repeatedly attempted to fulfill these and other requirements for advancement to the third-year clinical curriculum. The school actively assisted her in these efforts by providing free tutoring services, overlooking an honor code violation she committed, expressing its concern with her level of stress and allowing her the opportunity to remediate certain subjects multiple times.

In June 1996 UConn conditionally promoted plaintiff to the third-year curriculum, again subject to her passing Step I of the medical licensing exam. The school

wanted evidence that plaintiff had mastered the BMS–I and BMS–II subject matter since it had taken four years for her successfully to complete the first two years of the school's curriculum. UConn believed passage of Step I would provide them with that proof. In October 1996, after the school paid for plaintiff to take a preparatory course, she failed Step I again. In response, the school developed a six-month tutorial program for plaintiff to follow during the spring of 1997 in preparation for the June 1997 Step I exam, and did not charge plaintiff tuition for this period.

Powell failed the test again in June 1997 and the school initiated the process of dismissal. Final decision regarding the student's dismissal was deferred pending the outcome of her lawsuit against the National Board regarding its failure to grant her accommodation request, a matter which will be discussed below. If the National Board prevailed, plaintiff would be dismissed. If plaintiff prevailed, she would be given another chance to sit for Step I and, if she passed, would be allowed to continue to the third year of the medical program. As it turned out plaintiff did not prevail, and was later discontinued as a student.

### B. Plaintiff's Application to the National Board of Medical Examiners

In February 1997 plaintiff was referred to a neuropsychologist, Dr. A. Wallace Deckel. Dr. Deckel was employed by UConn's Department of Psychiatry and the medical school paid for his examination of plaintiff. Dr. Deckel's report concluded that, based on a battery of tests, Powell appeared to be suffering from dyslexia and attention deficit disorder (ADD), but the doctor also was of the opinion that anxiety and depression could not be ruled out as

the causes of her academic problems. He recommended Powell be given extra time to take the Step I examination.

Plaintiff submitted a redacted version of Dr. Deckel's evaluation to the National Board as part of her application for an accommodation of extended or double time to take the June 1997 exam. The National Board rejected her request because it concluded Powell's documentation failed to establish that she was disabled and thus a covered individual under the ADA. It further noted that her documentation did not include objective evidence of difficulties she experienced before entering medical school, as would be expected were the disability a significant functional impairment. The National Board also faulted Dr. Deckel, stating that when making his diagnosis he did not provide full clinical data to support his conclusions, and that the role of plaintiff's anxiety and depression was not ruled out as the cause of her academic difficulties.

Powell later submitted an unredacted version of Dr. Deckel's evaluation, accompanied by an additional letter from him, addressing the National Board's concerns and stating his diagnosis. These materials were received too late for the June 1997 exam. Powell was told she could resubmit them for a later examination, although the National Board informed plaintiff that the additional information and documents she had submitted did not appear to support a test accommodation.

Having failed to obtain an accommodation and having been dismissed as a medical student in 1997, plaintiff filed two complaints against the National Board and UConn in 1999. The first complaint claimed violations of a number of state and federal statutes and sought all possible relief, including injunctive relief allowing plaintiff to sit for the medical licensing examination with an accommodation, and

to be allowed to continue the third-year curriculum at the medical school. In the second, she claimed that UConn violated Titles II and III of the ADA and the Rehabilitation Act, and that the National Board violated Title III of the ADA and the Rehabilitation Act, but sought only damages, not injunctive relief. In November 1999 the two complaints were consolidated. Defendants moved for summary judgment in April 2001, on all of plaintiff's claims. The district court granted defendants' motion.

On this appeal plaintiff asks us to review the district court's grant of summary judgment only with respect to her ADA and Rehabilitation Act claims.

## DISCUSSION

### I Standard of Review

Both parties moved for summary judgment in the district court. When that court denied plaintiff's motion and granted defendants', it prompted this appeal. The standard applicable to a motion for summary judgment, resolution of which we review *de novo*, is a familiar one. Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This form of relief is appropriate when, after discovery, the party—here plaintiff—against whom summary judgment is sought, has not shown that evidence of an essential element of her case— one on which she has the burden of proof—exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This form of remedy is inappropriate when the issue to be resolved is both genuine and related to a disputed material fact. An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990). Moreover, the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

If the movant demonstrates an absence of a genuine issue of material fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts," and come forward with "specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993). If the nonmovant fails to meet this burden, summary judgment will be granted against it. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

### II Provisions of the Acts

#### A. *ADA Provisions*

We turn now to the provisions of the Acts which plaintiff claims were violated in her case. The ADA, which serves to protect the rights of individuals with disabilities, states that a disabled individual is one who suffers from "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A) (2000). Title II of that Act proscribes discrimination against the disabled in access to public services. Section 202 states "[N]o qualified individual with a disability shall ... be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132. A qualified

individual with a disability is defined as a disabled person who, whether or not given an accommodation, "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). Title II applies to any state or local government or instrumentality of a state or local government. *Id.* § 12131(1). UConn concedes it is an instrumentality of the state of Connecticut.

Title III of the ADA proscribes discrimination against the disabled in public accommodations. "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of pubic accommodation." *Id.* § 12182(a). UConn concedes that, as an educational institution, it meets the definition of public accommodation and is therefore subject to Title III. *See id.* § 12181(7)(J). The defendant National Board of Medical Examiners also concedes that its services constitute a public accommodation covered by Title III.

## B. Rehabilitation Act Provisions

Enacted before the ADA, the focus of the Rehabilitation Act is narrower than the ADA's in that its provisions apply only to programs receiving federal financial assistance. 29 U.S.C. § 794(a) (2000). Section 504 states that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under" any covered program or activity. *Id.* Because both UConn and the National Board receive federal funding, they are subject to the provisions of the Rehabilitation Act.

■ In short, the Rehabilitation Act and Titles II and III of the ADA prohibit discrimination against qualified disabled individuals by requiring that they receive "reasonable accommodations" that permit them to have access to and take a meaningful part in public services and public accommodations. *See Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2d Cir. 2003); *Felix v. New York City Transit Auth.,* 324 F.3d 102, 104 (2d Cir.2003) (quoting 42 U.S.C. § 12112(b)(5)(A)) ("The statute defines 'discriminate' to include 'not making reasonable accommodations [available to a qualified person with a disability] unless [the provider of the service] can demonstrate that the accommodation would impose an undue hardship on [its operations].' "). Since the standards adopted by Titles II and III of the ADA are, in most cases, the same as those required under the Rehabilitation Act, *see Henrietta D.,* 331 F.3d at 272, we consider the merits of these claims together.

■ In order for a plaintiff to establish a *prima facie* violation under these Acts, she must demonstrate (1) that she is a "qualified individual" with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilit[y]." *Id.*

## III Analysis

### A. Injunctive Relief

■ Turning to plaintiff's consolidated complaint, plaintiff alleges the National Board of Medical Examiners violated the Acts by turning down her request for an accommodation of extended time when taking Step I of the medical licensing examination, and that UConn violated the

same Acts by making her continued advancement in the medical school contingent on her passage of the test. In her complaint, she sought compensatory damages, punitive damages, attorneys' fees and costs. Monetary relief, however, is not available to private individuals under Title III of the ADA. 42 U.S.C. § 12188(a)(1) (same remedies available under Title III of ADA as under Title II of Civil Rights Act of 1964). A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages. *See Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (only injunctive relief available as remedy for violation of Title II of Civil Rights Act of 1964). The district court granted summary judgment to the National Board and UConn on the Title III claims based on the fact that plaintiff failed to request injunctive relief specifically against defendants. This ruling was error.

■ Under Rule 54(c) of the Federal Rules of Civil Procedure, a court can grant any relief to which a prevailing party is entitled, whether or not that relief was expressly sought in the complaint. *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 66, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978); *see also Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 142 (2d Cir. 2000). The sole exception to this rule is when a court grants relief not requested and of which the opposing party has no notice, thereby prejudicing that party. In such case, unasked for relief should not be granted. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 910 (2d Cir. 1997), which defendant National Board relies on, is distinguishable from the case at hand and from the above cited cases. In

that case there was a general prayer for relief in the complaint, and the court recognized that under Rule 54(c) plaintiff might have been entitled to some form of equitable relief after establishing his claim. Yet, damages were time-barred, reinstatement had been refused, and plaintiff was unable to articulate what activity ought to be enjoined; we ruled that in those circumstances the general prayer for relief was, as a matter of law, insufficient to defeat summary judgment. *Id.*

■ Here, those sorts of circumstances are not present. Nor would defendant be prejudiced were the plaintiff awarded injunctive relief since plaintiff's first complaint—consolidated with plaintiff's ADA and Rehabilitation Act complaint—put the defendants on notice of Powell's request to be allowed to take Step I with the accommodation and/or be allowed to continue with her medical education. After being placed on notice of plaintiff's request for injunctive relief to attain these ends, defendants cannot successfully maintain that they would be prejudiced were plaintiff to receive that relief. Consequently, even though plaintiff failed to request injunctive relief in her complaint alleging violations of the ADA and the Rehabilitation Act, the district court could not have granted summary judgment to the defendants on this ground, absent a showing of prejudice to defendants.

### B. *Plaintiff Not Prevailing Party*

Nevertheless, plaintiff cannot take advantage of this rule to avoid summary judgment being taken against her. The reason is because she was not the prevailing party—she did not make the necessary showing under Fed.R.Civ.P. 54(c) that she was entitled to injunctive relief under the Acts. Rule 54(c) states: "every final judgment shall grant the relief to which the party *in whose favor it is rendered is*

*entitled*, even if the party has not demanded such relief in the party's pleadings" (emphasis added). Thus, plaintiff was not entitled to injunctive relief, and summary judgment for the defendant was warranted due to the lack of merit of any claim plaintiff might have made for injunctive relief.

### C. *Proof of Entitlement to Continue*

■ Appellant did not make a showing of entitlement to injunctive relief because she failed to make out a *prima facie* case of discrimination under the Acts. First, we note she did not demonstrate that she was a qualified individual with a disability. Even assuming for purposes of our review, that plaintiff met the definition of being a disabled person under the Acts, she still did not present evidence showing she was otherwise qualified to continue to be a medical student at UConn.

It seems worthwhile at this juncture to set out appellant's educational background which supports the argument that she lacked academic eligibility, and thus was not otherwise qualified. She attended elementary parochial school where her best grades were in science, and although she now concedes she was slow, she did not require tutoring. In junior high school at St. Matthew's and at Cardinal Spellman High School she maintained a B average and was on the high school honor roll. Her major academic problem was slowness, although she never was held back a grade. Powell attended Hunter College where she majored in biology and psychology.

Further, the record reveals that despite long hours of study and much assistance from family members and members of the educational community, appellant was an average student for her entire educational life. The average to low-average results of an I.Q. examination led her own neuropsy-chologist, Dr. Deckel, to conclude that she would be likely to encounter difficulties in her advanced post-secondary courses such as those given in medical school. Powell's 3.16 undergraduate grade point average (GPA) was significantly below the average 3.45 GPA of an incoming medical student in her class, and her composite MCAT score of 20 was significantly lower than those of her colleagues of 28.4 as well. These facts suggest that she did not meet the essential eligibility requirements for participation in this medical school program. *See* 42 U.S.C. § 12131(2).

Plaintiff presented no additional proof to show that in fact she met those requirements and, in her own words, described the difficulties she experiences with basic memory function, vision, and reading comprehension in general. Thus, she failed to carry her burden to demonstrate she was otherwise qualified, as she needed to in order to establish her *prima facie* case and move forward to trial. *See Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994).

### D. *Proof of Discrimination on Basis of Plaintiff's Alleged Disability Lacking*

#### 1. *UConn*

Moreover, even if plaintiff proved she was otherwise qualified to be a medical student and to take Step I, she produced no proof that she was discriminated against under the Acts on account of her alleged disability, by either UConn or the National Board. On the contrary, nothing suggests that UConn did anything other than support Powell in her efforts to succeed in its medical program. The school supplied tutors for her, excused an honor code violation ostensibly because of its sympathy for her high level of stress, allowed her to remain matriculated without paying tuition, and gave her multiple opportunities to remediate classes that she

had previously failed. In the end, the school decided that it needed to be certain that appellant had integrated all of the learning from BMS–I and BMS–II in a way that she could utilize in her clinical rotations, and later as a treating physician.

■ A defendant is not required to offer an accommodation that imposes an undue hardship on its program's operation; it is only required to make a reasonable accommodation. 28 C.F.R. § 41.53 (2002). The ADA defines undue hardship as one requiring significant difficulties or expense when considered in light of a number of factors, one factor being the type of service or product being offered. *Cf. Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 221 (2d Cir.2001) (defendant employer failed as a matter of law to show that accommodation to plaintiff employee would cause it undue hardship) (citing 42 U.S.C. § 12111(10)(A) & (B)). In addition, a defendant need not make an accommodation at all if the requested accommodation "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7); *Henrietta D.*, 331 F.3d at 281.

■ It was well within UConn's authority to decide that in order for it to adhere to the demanding standards of a medical school responsible for producing competent physicians, it needed to require plaintiff to pass Step I. The accommodation requested by plaintiff, that she be allowed to continue in the program without first passing Step I, would have changed the nature and substance of UConn's program. Other underperforming students were required to prove their mastery of this knowledge before being allowed to advance. Permitting a student who did not definitively prove her mastery of basic medical sciences to advance into the later stages of medical school, and become a treating physician who had direct contact

with patients was something the medical school correctly believed would unreasonably alter the nature of its program. *See* 28 C.F.R. § 35.130(b)(7).

■ When reviewing the substance of a genuinely academic decision, courts should accord the faculty's professional judgment great deference. *See Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). A sister circuit facing a similar issue observed that the medical school had diligently assessed the available options and then made an academic judgment that a reasonable accommodation was not available and, that to accommodate the student would work a change in the substance of its medical program, and impose an undue hardship on its academic program. *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir.1992). In the pending case, after diligent review, UConn made a similar rational decision.

Plaintiff failed to produce evidence to create an issue of fact with respect to whether UConn's decision was made on a discriminatory basis. Her failure to present such proof, accordingly, entitled defendants to an award of summary judgment dismissing her complaint.

## 2. *National Board*

■ With respect to the National Board, it is clear that it followed its standard procedure when it determined that appellant was not entitled to a test accommodation. Its procedures are designed to ensure that individuals with *bona fide* disabilities receive accommodations, and that those without disabilities do not receive accommodations that they are not entitled to, and which could provide them with an unfair advantage when taking the medical licensing examination. As administrator of the national exam used by a number of

states for licensing medical doctors, the National Board has a duty to ensure that its examination is fairly administered to all those taking it.

Contrary to Powell's allegations, neither the timing of the National Board's review of her application or its response to it, nor the nature of that review and response, are in any way discriminatory. Appellant did not produce any evidence in support of such allegations. She simply declares that Dr. Deckel's diagnosis of her condition relating to her alleged disability is enough to establish that she is disabled and thus entitled to an accommodation. The National Board, however, upon review of the documentation submitted in conjunction with plaintiff's application, determined that Dr. Deckel's diagnosis was unsound and that he had not ruled out emotional issues, stress or low intellectual capacity in general as reasons for appellant's difficulties in passing the Step I test.

Were the National Board to depart from its procedure, it would be altering the substance of the product because the resulting scores would not be guaranteed to reflect each examinee's abilities accurately. Nothing in the record suggests that the National Board's review and rejection of plaintiff's application for an accommodation was anything other than standard procedure. Nor is there evidence that the standard procedure itself was unreasonable or discriminatory in nature. Thus, appellant has not identified a material issue of fact that exists with respect to her allegations of discrimination against the National Board.

### IV  Money Damages

In order to obtain money damages as a remedy for UConn's alleged violation of Title II of the ADA, plaintiff would need to show not only that there was a violation, but that such violation was motivated by either discriminatory animus or ill will stemming from plaintiff's disability. *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 112 (2d Cir.2001). In order to recover monetary damages under the Rehabilitation Act against the National Board, plaintiff would need to show that any violation resulted from "deliberate indifference" to the rights the disabled enjoy under the Act. *Id.* at 115. As stated earlier we find that the defendants did not violate the Acts. Moreover, we agree with the district court that plaintiff failed to present evidence showing the existence of either ill will or animus on the part of UConn, or deliberate indifference on the part of the National Board. Hence, she would not be entitled to money damages, in any event. Finally, since we have disposed of this appeal on the lack of merit to plaintiff's claims, we need not reach or decide the sovereign immunity issue raised by the district court as it is unnecessary to our holding.

### CONCLUSION

In sum, even if the plaintiff is disabled, she has produced no evidence to show she is otherwise qualified to continue in medical school and has offered no evidence of discrimination by either the National Board or UConn. She is thus unable to show that a material issue of fact exists that would prevent defendants from being entitled to summary judgment. Accordingly, we affirm the district court's grant of summary judgment for defendants on all claims.

Affirmed.