Joyce **HARTNETT**, Plaintiff–Appellant,

v.

The **FIELDING GRADUATE INSTITUTE, Nancy Leffert, Fugi Collins, and Marilyn Freimuth in their official and individual capacities, Defendants–Appellees.**

No. 05–6686–cv.

United States Court of Appeals, Second Circuit.

Sept. 21, 2006.

Costantino Fragale, Eastchester, NY, for Appellant.

Brian S. Sokoloff, Miranda Sokoloff Sambursky Slone Verveniotis, LLP, Mineola, NY, for Appellees.

PRESENT: Hon. CHESTER J. STRAUB, Hon. SONIA SOTOMAYOR, and Hon. ROBERT A. KATZMANN, Circuit Judges.

## SUMMARY ORDER

Plaintiff–Appellant Joyce Hartnett appeals the judgment of the District Court for the Southern District of New York (Colleen McMahon, *Judge* ), granting summary judgment in favor of defendant The Fielding Graduate Institute ("FGI") and dismissing Hartnett's claims under the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act of 1973.

We review the District Court's grant of summary judgment de novo. *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir.2004). "To justify summary judgment, the defendants must show that 'there is no genuine issue as to any material fact' and that they are 'entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)). We resolve all ambiguities, and credit all rational factual inferences, in favor of the non-moving party, in this case Hartnett. *Id.* However, "the existence of a mere scintilla of evidence in support of nonmovant's position is insufficient to defeat the motion; there must be evidence on which a jury could reasonably find for the nonmovant." *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir.2004).

We assume the parties' familiarity with the facts and arguments on appeal. Briefly summarized, the facts of this case are as follows. FGI is a "distance learning" graduate institution. Among other things, FGI offers a PhD program in clinical psychology ("the PhD Program"). The PhD program is primarily a distance learning program; the majority of the program consists of online courses. However, students are required to meet a 300 hour residency requirement. This requirement can be satisfied in a number of ways, of which the primary method is the "cluster meeting"—monthly group meetings between students and their faculty advisors.

Hartnett was accepted to FGI's PhD program in December 2000. In her application materials, Hartnett informed FGI that she suffers from lupus, which causes her severe physical exhaustion, muscle pain and weakness, headaches and nausea. Hartnett requested that FGI make a number of accommodations to her disability. FGI ultimately refused her requests, and, in October 2001, Hartnett withdrew from the program.

Both the Rehabilitation Act and the ADA "prohibit discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that permit them to have access to and take a meaningful part in public services and public accommodations." *Powell,* 364 F.3d at 85 (quotation marks omitted). For present purposes, the requirements of the two statutes are identical, and we will consider them together. *See id.* In order to establish a prima facie case under either statute, Hartnett must show that: (1) that she is a "qualified individual" with a disability; (2) that FGI is subject to one of the Acts; and (3) that she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated

against by defendants, by reason of her disability." *Id.* (quotation marks and alterations omitted).

While FGI is required to make "reasonable accommodations" to allow for Hartnett's disability, it "is not required to offer an accommodation that imposes an undue hardship on its program's operation." *Id.* at 88 (citing 28 C.F.R. § 41.53 (2002)). "In addition, a defendant need not make an accommodation at all if the requested accommodation 'would fundamentally alter the nature of the service, program, or activity.'" *Id.* (quoting 28 C.F.R. § 35.130(b)(7)). Finally, "[t]he obligation to make reasonable accommodation . . . does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability." 29 C.F.R. Pt. 1630.9, App.; *see also Felix v. N.Y. City Transit Auth.,* 324 F.3d 102, 107 (2d Cir.2003) ("The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally.").

There is no dispute here that FGI is subject to the ADA and the Rehabilitation Act, or that Hartnett is qualified to take part in the PhD program. The critical question is whether the accommodations sought by Hartnett were reasonable. We will consider each of Hartnett's requests in turn.

Principally, Hartnett sought to be transferred from the cluster group to which she had been assigned, headed by a Dr. Ruffins, to another cluster group, headed by a Dr. Freimuth. FGI refused this request, on the ground that Dr. Freimuth's cluster group was over-subscribed and Dr. Ruffins' was under-subscribed. We must give Dr. Freimuth's determination that her cluster was over-subscribed great deference. *See Powell,* 364 F.3d at 88 (2d Cir.2004) ("When reviewing the substance of a genuinely academic decision, courts should accord the faculty's professional judgment great deference."). Although Hartnett presented evidence that FGI student Adrienne Vogel withdrew from Dr. Freimuth's cluster around the time Hartnett requested a transfer, this alone does not establish that the cluster did not remain oversubscribed.

Hartnett identifies two ways in which a transfer to Dr. Freimuth's group would have accommodated her disability—and specifically, the additional difficulty she suffers as a result of her lupus when commuting long distances. First, Hartnett observes that the commute from her home to Dr. Freimuth's Manhattan office is shorter than the commute to Dr. Ruffins' Manhattan office. Given the absence of medical evidence that a two to three mile difference in Hartnett's commute would have made a difference to her health, we agree with the District Court that no reasonable trier of fact could find the two to three mile difference between the two offices significant, in the context of plaintiff's forty-five mile commute into Manhattan from Yorktown Heights, New York.

■ Second, Hartnett observes that Dr. Freimuth's *home* office, in Bedford, New York, is significantly closer to Hartnett's home than is either Manhattan office, and suggests that she could have fulfilled her residency requirement through face-to-face meetings at Dr. Freimuth's home office. It appears from the record that some FGI faculty met with students, or held some of their cluster meetings, at their home offices. However, Dr. Freimuth denied that she herself ever did so, and no evidence in the record contradicts that assertion. The mere fact that Dr. Freimuth listed her home office telephone number—alongside her Manhattan office number—on FGI's website, does not suffice to raise an inference that she used the office to

meet face-to-face with students. In the absence of any showing that it was Dr. Freimuth's practice to meet with students at her home office, we do not think that the ADA or the Rehabilitation Act compels her to do so. To impose such a requirement would not only be a severe burden on faculty, but would work a substantial change in the nature of the teaching program of those faculty who prefer not to use their home offices for face-to-face student meetings. *See Powell*, 364 F.3d at 88. The undisputed evidence thus establishes that re-assignment to Dr. Freimuth's cluster would not reasonably have accommodated Hartnett's disability.

Hartnett's second request was for part-time status. As the District Court correctly observed, FGI is already effectively a part-time program: students are free to take FGI's courses at their own pace. Hartnett's request for part-time status was essentially a request for a reduction in tuition, and would not have accommodated her disability in any way.

■ Hartnett's third request was that the start of her program be deferred until September 2001, and that a space be reserved for her in Dr. Freimuth's cluster at that time. The District Court interpreted Hartnett's request as motivated solely by her desire for a place in Dr. Freimuth's cluster. Accordingly, the District Court, having found that a transfer to Dr. Freimuth's cluster was not a reasonable accommodation to her disability, found that it was reasonable for FGI to deny this request as well. We agree with the District Court that it was reasonable for FGI to deny Hartnett's request insofar as she sought a transfer, in September 2001, to Dr. Freimuth's cluster. However, in her request for the deferral, Hartnett also explained that she had suffered a "setback" in her treatment, and was "to begin a new treatment in mid-January. The benefits will not be realized for about six months."

A rational jury could conclude that FGI did not properly consider Hartnett's request to delay the start of her coursework in order to allow her treatment to progress, and could conclude that such a delay would have been a reasonable accommodation to her illness. We therefore reverse and remand for further proceedings with respect to this claim.

Finally, Hartnett requested that she be allowed to fulfill her residency requirement through video-conferencing. FGI's Associate Dean Nancy Leffert testified to the reason for FGI's denial of this request:

> The requirement that residency hours be accrued by face-to-face contact with faculty members is rigid.... This requirement was put in place in order to obtain accreditation from the American Psychological Association ("APA"). The APA .... requires that doctoral graduate programs in Clinical Psychology require a minimum of 3 full-time academic years, at least one year of which must be in full-time residence (or the equivalent thereof) at that same institution. In 1991, the APA permitted [FGI] to satisfy the one-year residency requirement through 300 hours of face-to-face student-faculty contact, as the equivalent of one year of full-time residency. The APA only accepted this proposal on the condition that there be *actual face-to-face contact* with the faculty member for the 300 hours.... If [FGI] were to make an exception to this requirement, it would jeopardize its accreditation.

(quotation marks omitted, emphasis in original).

■ Nothing in the record before us indicates that video-conferencing would, absent the APA's requirements, pose an undue burden for FGI. We agree with the District Court that FGI is not required to jeopardize its accreditation in order to accommodate Hartnett's disability. However, it appears that FGI never contacted

the APA to determine whether an exception could be made in Hartnett's case, in light of her illness. In the absence of any such inquiry, FGI cannot rely on the APA's *presumed* refusal to permit such an exception. We therefore reverse and remand with respect to this request.

Finally, Hartnett argues that FGI failed to engage in an "interactive process" in an attempt to accommodate her. In the employment context, we have held that "the ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 218 (2d Cir.2001) (quotation marks omitted). We have yet to determine, however, whether an employer's failure to carry out such an interactive process gives rise to an independent cause of action, *see id.* at 219 (declining to address the question), or whether any such duty applies in the educational as opposed to the employment context.

■ The District Court did not reach these questions, finding that "the undisputed evidence shows that FGI did engage in an 'interactive process' with [Hartnett]." We disagree. The District Court relied primarily on the evidence of a meeting between Hartnett and faculty members at a March 2001 orientation session, at which Hartnett's disability was discussed. Hartnett testified that this meeting, far from being a good-faith attempt to reach an accommodation, was "hostile", "intimidating," and "upsetting." Moreover, this meeting came after FGI had already, by e-mail, denied Hartnett's requests. A reasonable trier of fact could credit Hartnett's testimony, and could conclude from the course of dealings between Hartnett and FGI that no effort was made to accommodate her. We therefore reverse the District Court's grant of summary judgment on this question because material issues of fact exist as to whether FGI engaged in an interactive process. On remand, the District Court should consider, in the first instance, whether the duty to engage in an interactive process is applicable in the educational context, and whether the failure to engage in such a process gives rise to an independent cause of action under the ADA.

We have considered all of the parties' arguments. For the foregoing reasons, we affirm with respect to Hartnett's request for reassignment to Dr. Friemuth's cluster, and with respect to her request for part-time status. With respect to her remaining requests, and to the District Court's finding that an interactive process occurred, we reverse and remand for further proceedings in accordance with this order. All motions for costs, fees, and sanctions are denied.