**Joseph P. McINERNEY, Plaintiff,**

v.

**RENSSELAER POLYTECHNIC INSTITUTE, Defendant.**

No. 1:05–CV–1267.

United States District Court,
N.D. New York.

Oct. 11, 2013.

Joseph M. Hein, Esq., Office of Joseph Hein, Altamont, NY, for Plaintiff.

Michael E. Ginsberg, Esq., Pattison, Sampson, Ginsberg & Griffin, P.C., Troy, NY, Jonathan G. Schopf, Esq., The Vincelette Law Firm, Albany, NY, for Defendant.

### MEMORANDUM AND ORDER

DAVID N. HURD, District Judge.

Joseph P. McInerney ("plaintiff") brings this action against Rensselaer Polytechnic Institute ("defendant" or "RPI") pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189 (2006), and Section 504 of the Rehabilitation Act ("§ 504"), 29 U.S.C. §§ 701–7961 (2006).[1]

A bench trial was conducted over seven days in Utica, New York on the following dates: August 10, 2010; August 11, 2010; November 29, 2010; November 30, 2010; December 1, 2010; December 2, 2010; and October 4, 2011. The following witnesses testified: plaintiff; Leik Myrabo, former Associate Professor, RPI ("Professor Myrabo"); Antoinette Maniatty, former Associate Chair of Graduate Studies, Department of Mechanical, Aerospace and Nuclear Engineering ("MANE"), RPI ("Professor Maniatty"); Lester Gerhardt, former Vice Provost and Dean of Graduate Education, RPI ("Dean Gerhardt"); John Tichy, former MANE Department Head, RPI ("Dr. Tichy"); Mark Smith, Dean of Students, RPI; Matthew Filippelli, Engineer, Graduate of RPI; Deborah Kaminski, Professor, RPI ("Professor Kaminski"); and Kenneth Jansen by deposition, former Professor, RPI ("Professor Jansen"). Decision was reserved.

After the conclusion of the bench trial, the parties were afforded time to review transcripts of the proceedings and submit proposed findings of fact and conclusions of law. Those submissions have been received and reviewed together with the transcripts. The following are the Findings of Fact and Conclusions of Law as required by Federal Rule of Civil Procedure 52(a).

---

1. Plaintiff also brought a breach of contract claim which was dismissed on February 25, 2010, in a Memorandum–Decision and Order granting in part and denying in part defendant's motion for summary judgment. *McInerney v. Rensselaer Polytechnic Inst.*, 688 F.Supp.2d 117 (N.D.N.Y.2010) (amended on

## I. *FINDINGS OF FACT* [2]

In August 2000, McInerney suffered a bacterial brain infection, causing a stroke and permanent brain damage. Despite multiple surgeries, he still suffers from numerous side effects that sometimes make daily functioning difficult. The more talking, reading, working, or typing he does, the more the side effects present themselves. He suffers from periodic epileptic seizures, chronic fatigue, sleepiness, dizziness, head rushes, and leg pain.

In August 2001, McInerney enrolled at RPI as a Ph.D. student in the Mechanical Engineering program. At that time, he was still suffering from the side effects of the brain infection and stroke. Pursuant to RPI's required procedure for requesting disability accommodations, he filled out a "Student Fact Sheet." Def.'s Ex. 1. He indicated on the form that he wanted testing accommodations and for his professors to be notified of his disability. After conversation with Debra Hamilton, Assistant Dean for Disabled Student Services ("Dean Hamilton"), plaintiff requested fifty percent additional time to take exams. Plaintiff's professors were notified by letter of his condition, his protections under Title III and Section 504, and his entitlement to additional test taking time.

As part of the MANE department, of which plaintiff was a student member, all doctoral students must select a plan of study, choose a thesis advisor, pass an Oral Department Qualifying Exam, pass a Doctoral Candidacy Exam, and successfully defend their thesis. The thesis advisor must be a full-time tenured or tenure-track member of the RPI faculty. McInerney's plan of study "involved laser-sup-

ported detonation as a propulsion method for light craft space vehicles powered by laser." *McInerney,* 688 F.Supp.2d at 121. He chose Professor Myrabo as his original thesis advisor. In April 2002, plaintiff took and passed the Oral Department Qualifying Exam.

Almost a year later, in early February 2003, Professor Myrabo asked to step down as McInerney's thesis advisor because plaintiff was difficult to work with. According to Professor Myrabo, plaintiff's behavior was confrontational, aggressive, demanding, inflexible, belligerent, manipulative, and irrational. However, Professor Maniatty convinced Professor Myrabo to continue working with McInerney if McInerney agreed. A meeting was held on February 25, 2003 with plaintiff, Professor Maniatty, Professor Jansen, and Dean Hamilton, at which time plaintiff decided he did not want Professor Myrabo to serve as his thesis advisor because Professor Myrabo had removed some of plaintiff's papers from the wall of his office. Shortly thereafter, Professor Jansen became McInerney's thesis advisor.

About a week before McInerney was scheduled to take his Doctoral Candidacy Exam, he met with Professor Jansen who would also be one of the examiners, to explain his medical condition and make arrangements for periodic breaks to rest during the exam. Plaintiff brought to the meeting his letter of accommodation from the Disabled Student Services Office and some medical records. Professor Jansen testified that he clearly indicated to McInerney that if he needed a break during the exam, he could ask for it, and he would get it. Plaintiff testified that Professor Jan-

March 24, 2010, to correct a typographic error, *see* ECF No. 107).

**2.** The following facts are taken from the evidence presented at trial. The general facts

are laid out here; to the extent more specific facts are necessary to analyze an individual cause of action, they will be referenced accordingly.

sen specifically advised he would provide a break after plaintiff's lecture, and any additional breaks that plaintiff asked for. McInerney admits that he never made a request for breaks at specific intervals. Prior to the exam, Professor Jansen notified the other examiners of McInerney's condition, that he might ask for breaks during the exam, and that if he were to ask for a break he was to get it. Finally, no time limit was placed on the exam.

McInerney took the Doctoral Candidacy Exam in April 2003. The exam began with plaintiff's lecture, lasting approximately thirty minutes. He then took one fifteen minute break. Following the break, questions ensued from the examiners. Examiner Professor Kaminski asked McInerney a series of questions about radiation, some of which he was unable to answer. McInerney admitted that he was stumped by at least one question, but contends that some of Professor Kaminski's questions were unfair. According to plaintiff, she asked questions for approximately ninety minutes. During this period, he became fatigued and experienced head rushes. Plaintiff admits that he never asked for a break and never advised the examiners that he was suffering from fatigue or head rushes. Plaintiff testified: "I mean, looking back on this, I could have asked for taking breaks, but at the time I was not able to reason my way through to ask for a break." McInerney Tr., Aug. 10, 2010, ECF No. 144, 99:9–11.

According to RPI, McInerney's radiation model, prepared prior to the exam, was flawed and he was unable to demonstrate a basic understanding of the fundamental principles of radiation. After fail-ing to answer certain questions, and failing to demonstrate the required expertise in the field, plaintiff failed the Doctoral Candidacy Exam.

The day after failing the exam, McInerney met with Dr. Tichy. Plaintiff explained that his failure to answer the questions was because he was not given adequate breaks and he was fatigued as a result of his disability, not because of his lack of knowledge. He asked Dr. Tichy to inform the examiners of this explanation. Dr. Tichy testified that he explained to plaintiff that at the moment, he was on his way to a meeting and he could not do anything at the time, but that normal academic protocol could run its course. Although he did not explain it to plaintiff at the time, Dr. Tichy testified that he meant there were policies in place for a student to appeal a failing grade and opportunities to retake the exam. The procedure a student must follow after failing a Doctoral Candidacy Exam is not directly specified in MANE's Doctoral Degree Requirements. Depending on the nature of the deficiencies, a student may be required to retake the Doctoral Candidacy Exam or resolve the deficiencies and get each examiner's approval.[3] Although McInerney had the opportunity to reschedule and retake the Doctoral Candidacy Exam, he never did, and therefore never fulfilled the requirements of the program.

McInerney took a leave of absence for the 2003–2004 academic year. During that time, he continued to work on his thesis and Professor Jansen continued to serve as his advisor. Although on leave, McInerney spent time trying to learn how to run the computer program PHASTA as

---

3. As detailed in the Memorandum–Decision and Order, "[t]he allegations which state that defendant failed to recognize plaintiff's post-exam efforts were not properly pled in the amended complaint and thus, the consider-ation of this claim will be strictly limited to defendant's alleged failure to give plaintiff a second opportunity to take the Candidacy Exam." *McInerney*, 688 F.Supp.2d at 126.

part of his thesis, from home. Professor Jansen advised plaintiff to use online tutorials which gave step-by-step directions for installing the code. Plaintiff found learning the code to be very difficult and contends he had difficulties concentrating long enough to use the tutorials. He asked Professor Jansen for a tutor which he offered to pay at his own expense. However, he never requested a tutor as part of his disability accommodation through RPI's Disabled Student Services Office. Professor Jansen advised plaintiff by e-mail: "I don't think a tutor will be necessary, but we can cross that bridge if/when we come to it." Jansen Tr., Oct. 4, 2011, ECF No. 143, 12:21–23. Plaintiff believed a tutor would identify the mistakes he was making in configuring the code while defendant contends plaintiff was averse to learning the required code and merely wanted a tutor to help with the work.[4] McInerney never successfully learned PHASTA and ultimately ended his student-advisor relationship with Professor Jansen in July 2004. He continued to remain on an extended leave of absence during the 2004–2005, 2005–2006, and 2006–2007 school years.

In July 2007, McInerney requested reactivation of his student status. In August, he received a letter from Dean Gerhardt and Timothy Wei, then MANE Department Head, informing him that in order to be readmitted to the doctoral program in Mechanical Engineering, he would need to propose a new research topic, propose the name of a research advisor, propose a potential Ph.D. thesis committee, and draft a graduate plan of study. This was because plaintiff failed the Doctoral Qualifying Exam, did not meet the follow-up requirements with Professor Kaminski, and

lacked a thesis advisor after terminating his relationship with Professor Jansen. In response to a letter from his attorney, plaintiff received a second letter from Dean Gerhardt, reiterating the requirements to regain active status and advising plaintiff that he must begin the dissertation process anew because he declined to work with the only two professors at RPI who knew his research topic well enough to supervise his research. As a result, his request for reactivation was denied.

To date, plaintiff has neither selected a new thesis topic nor been granted active status at RPI.

## II. CONCLUSIONS OF LAW

■■■ Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of any public place. 42 U.S.C. § 12182(a). The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities" of an individual. *Id.* § 12102(1)(A). The ADA defines "discrimination" to include

a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

*Id.* § 12182(b)(2)(A)(ii). Thus, a place of public accommodation must provide " 'reasonable accommodations' for a disabled in-

---

**4.** Further testimony was elicited regarding whether plaintiff had problems with the code due to the computer he was using.

dividual whenever doing so would provide that individual with an opportunity to participate in, make use of, or derive a benefit from a program, facility, or service that would otherwise not be equally accessible to disabled and non-disabled individuals." *Andersen v. North Shore Long Island Jewish Healthcare,* No. CV 12–1049, 2013 WL 784391, at *10 (E.D.N.Y. Jan. 23, 2013), *adopted by* 2013 WL 784344 (E.D.N.Y. Mar. 1, 2013). "This does not require a Title III defendant to provide a plaintiff with her ideal or preferred accommodation; rather, the ADA requires that a defendant provide a plaintiff with an accommodation that is 'reasonable' and permits the plaintiff to participate equally in the good, service, or benefit offered." *Id.* at *10. Whether a particular accommodation is "reasonable" is a fact-specific determination, and must be decided on a case-by-case basis. *Kennedy v. Dresser Rand Co.,* 193 F.3d 120, 121 (2d Cir.1999).

Section 504 of the Rehabilitation Act, enacted prior to the ADA, is narrower than the ADA in that its provisions apply only to programs receiving federal financial assistance. 29 U.S.C. § 794(a). Section 504 states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* The term "[p]rogram or activity" includes all of the operations of "a college, university or other post secondary institution, or a public system of higher education . . . any part of which is extended Federal financial assistance." *Id.* § 794(b)(2)(A).

Title III and § 504 provide similar protections to individuals with disabilities and the merits of such claims are generally considered together. *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir.

2003). To assert a claim under these statutes, plaintiff must establish (1) that he is an individual with a disability; (2) that defendant is subject to the Acts; and (3) that he was denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or was otherwise discriminated against by defendant, by reason of his disability. *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 85 (2d Cir.2004) *corrected by* 511 F.3d 238 (2d Cir.2004).

First, defendant does not dispute that McInerney is disabled in that he has an impairment which substantially limits the major life activities of learning and concentrating and is thus disabled within the meaning of the statutes. As to the second element, as an educational institution receiving Federal financial assistance, RPI is subject to Title III and § 504. At issue is the third element: whether plaintiff was denied the opportunity to participate in or benefit from RPI's services, programs, or activities, or was otherwise discriminated against by RPI by reason of his disability.

## A. Failure to Provide Sufficient Rest Breaks During Exam—First and Second Causes of Action

McInerney alleges RPI violated the ADA and the Rehabilitation Act when his examiners failed to provide sufficient rest breaks during his Doctoral Candidacy Exam. An entity administering an exam is required by ADA regulations to select and administer an exam so as to best ensure that when administered to an individual with a disability, such exam accurately reflects the individual's aptitude. 28 C.F.R. § 36.309(b)(1)(i). To achieve this goal, an entity may be required to make modifications to the exam including changes in the length of time permitted for completion and adaptation of the manner in which the examination is given. *Id.* § 36.309(b)(2).

Plaintiff met with Professor Jansen prior to the exam, and explained his medical condition and need for breaks. Professor Jansen testified that he clearly indicated to plaintiff that if he needed a break, he could ask for it, and he would get it. Plaintiff acknowledged this at trial. During the exam, he received one break after approximately thirty minutes, but never asked for another one. Moreover, during the exam, plaintiff behaved in a manner that appeared normal and did not appear to the examiners as though his disability was affecting him. McInerney himself testified that although he was suffering from fatigue and head rushes, he hid this from the examiners.

Based on the testimony adduced at trial, it was clear that plaintiff was free to ask for breaks at any point during the exam. He admitted that he could have asked for breaks but did not. Plaintiff's conversation with Professor Jansen prior to the exam did not preclude him from requesting or receiving frequent breaks during the exam. McInerney's failure to request additional breaks during the exam was the reason he was not given additional breaks. Thus plaintiff has failed to prove by a preponderance of the evidence that RPI did not provide him reasonable accommodations as required by the ADA and the Rehabilitation Act.

Accordingly, the first and second causes of action will be dismissed.

## B. Failure to Inform Examiners of Disability—Third Cause of Action

McInerney alleges that RPI violated the ADA when Dr. Tichy failed to assist him in communicating to the examiners the problems he encountered during the Doctoral Candidacy Exam. It is undisputed that plaintiff approached Dr. Tichy the day after failing the exam and asked Dr. Tichy to explain to the examiners that he

failed to answer the questions properly because he was not given adequate breaks and was fatigued as a result of his disability, not because of his lack of knowledge. It is also undisputed that Dr. Tichy did not fulfill plaintiff's request.

Dr. Tichy's failure to relay plaintiff's explanation to the examiners was not a violation of the ADA. Accommodations for plaintiff's disability—i.e. frequent breaks—were discussed prior to the exam and, as explained above, were provided to the extent that plaintiff, who was in control of requesting those breaks, asked for them. Moreover, the examiners were informed of plaintiff's disability prior to the exam and were told that plaintiff would need frequent breaks and that if he requested a break he were to be given one. Professor Kaminski testified to this and plaintiff himself admitted that examiners Professors Jansen and Theodorian Borca–Tascuic were aware of his disability. Plaintiff has failed to prove by a preponderance of the evidence that Dr. Tichy's failure to inform the examiners of something they already knew was a violation of the ADA.

Therefore, plaintiff's third cause of action will be dismissed.

## C. Failure to Provide a Second Opportunity to Take Exam—Fourth and Fifth Causes of Action

McInerney alleges that RPI's refusal to provide him a second opportunity to take the Doctoral Candidacy Exam constituted an act of discrimination in violation of the ADA and the Rehabilitation Act. Plaintiff testified that it is a Ph.D. student's obligation to schedule their Doctoral Candidacy Exam. Moreover, by plaintiff's own pleadings and testimony, he acknowledges the requirement of having to take a second exam after failing the initial

exam.[5] Professor Kaminski testified that at some point following the exam, she became satisfied with plaintiff's radiation model, and felt he was ready to retake the exam. She testified that she expected him to reschedule the exam but he did not do so. Plaintiff testified that he did not attempt to schedule a second exam because he had no thesis advisor with which to schedule an exam. However, he acknowledged that for a period of time after he did not pass the first exam and before he terminated his relationship with Professor Jansen, he had an advisor. McInerney cannot establish by a preponderance of the evidence that he was denied the opportunity to retake the exam by reason of his disability. Instead, he failed to reschedule a retake of the exam. Even if plaintiff was eventually unable to retake the exam because he lacked a thesis advisor, the lack of a thesis advisor does not constitute discrimination as explained below.

Accordingly, the fourth and fifth causes of action will be dismissed.

### D. Failure to Provide Assistance to Understand and Use the Fluids Code—Sixth Cause of Action

■ McInerney alleges RPI failed to provide him reasonable accommodations in violation of the ADA when Professor Jansen refused to find him a tutor to assist him with learning PHASTA. Professor Jansen first advised plaintiff that he didn't "think a tutor will be necessary, but we can cross that bridge if/when we come to it." Jansen Tr., 12:21–23. His testimony indicated that he was reluctant to provide plaintiff a tutor before he tried the online tutorials. Even after plaintiff tried the online tutorials, Professor Jansen encour-

aged plaintiff to continue to attempt to use the tutorials because all of his students had success with them. Moreover, the online tutorials could be stopped, rewound, and viewed at plaintiff's leisure, in conformance with plaintiff's requested accommodations for extra time and rest breaks. Professor Jansen also advised McInerney that he needed to develop his computer science skills and that he needed to work through learning the code. There is no evidence that Professor Jansen was entirely unwilling to provide plaintiff with a tutor due to his disability nor has RPI indicated an unwillingness to accommodate plaintiff's disability. Defendant granted McInerney all of his requested accommodations including fifty percent extra time on exams, accommodations during his Oral Department Qualifying Exam in his first year, and breaks as needed during his Doctoral Qualifying Exam. Plaintiff has not proven by a preponderance of the evidence that defendant violated the ADA when it did not provide him a tutor to learn PHASTA.

Therefore, the sixth cause of action will be dismissed.

### E. Failure to Assist in Finding a Thesis Advisor—Seventh Cause of Action

■ McInerney alleges RPI violated the ADA by failing to assist him in finding a third thesis advisor. Pursuant to RPI policy, a Ph.D. candidate's thesis advisor must be a full-time tenured or tenure-track member of the RPI faculty. McInerney testified that he ended his student-advisor relationships with both Professors Myrabo and Jansen.[6] Dean Gerhardt and Dr.

5. While his post-exam efforts to satisfy Professor Kaminski's questions may be disputed, those actions are not at issue here. As previ-

ously explained, those allegations were not pleaded in the amended complaint.

6. Although there was conflicting testimony regarding the events leading up to the termi-

Tichy testified that Professors Myrabo and Jansen were the only full-time tenured or tenure-track faculty members with the necessary expertise to advise plaintiff's thesis. Professor Maniatty and Dr. Tichy also both acknowledged that they were not competent to be plaintiff's thesis advisor. Moreover, Dr. Tichy testified that RPI does not hire tenured or tenure-track faculty members for the specific purpose of advising a particular Ph.D. candidate's project. He also explained that if RPI were to allow a modification of its policies and permit an individual who is not a tenured or tenure-track professor to act as a thesis advisor, the graduate requirements for obtaining a Ph.D. at RPI would be fundamentally altered and the quality of the degree received under those circumstances would be lessened. Further, such alteration would have a negative impact on RPI's accreditation status and its reputation and as a world renowned engineering school.

McInerney has failed to prove by a preponderance of the evidence that RPI violated the ADA by failing to find him a third thesis advisor when it employed no faculty proficient in plaintiff's chosen field of study and after plaintiff voluntarily terminated relationships with two professors who were competent in his chosen area of study.

Accordingly, the seventh cause of action will be dismissed.

### F. *Failure to Change Student Status—Eighth and Ninth Causes of Action*

■ McInerney alleges RPI violated the ADA and the Rehabilitation Act when it refused to allow him to change to "active" status and resume his education at RPI. It is undisputed that in July 2007, plaintiff requested to reactivate his student status and that in August he received a letter back from RPI informing him that he had failed the Doctoral Candidacy Exam, failed to satisfy the follow up requirements with Professor Kaminski, and that he had no faculty member to serve as his thesis advisor. Plaintiff was advised that in order to be granted active status, he would need to propose a new research topic, propose the name of a research advisor, propose a potential Ph.D. thesis committee, and draft a graduate plan of study. These requirements are consistent with RPI requirements for all Ph.D. candidates. Because McInerney failed to comply with the conditions for reinstatement to the program, RPI was under no obligation to change his status to "active." As previously explained, plaintiff terminated his student-advisor relationship with the two professors qualified in his thesis area and thus RPI required that he propose a new research topic.

Dean Gerhardt's October 2007 follow-up letter to plaintiff's attorney explained that RPI was not requiring plaintiff to submit an application, but instead was asking for a proposal which would assist the faculty in determining McInerney's academic readiness to return to the program with a realistic chance to complete the degree. Dean Gerhardt advised: "The main issue here is that Rensselaer faculty assessed Mr. McInerney's overall academic performance in his doctoral program and found it unsatisfactory, but had given him an opportunity to rectify weaknesses. Rensselaer fac-

nation of Professor Myrabo as plaintiff's advisor—specifically whether plaintiff was in fact confrontational, aggressive, inflexible, and belligerent—plaintiff testified that during a February 25, 2003, meeting he decided he did not want Professor Myrabo as his thesis advisor because Professor Myrabo had removed some of plaintiff's papers from the wall of his office.

ulty alone evaluate a student's work and academic progress." Def.'s Ex. 23. RPI, as an academic institution, made decisions regarding plaintiff's achievements and progress, or lack thereof, in the Ph.D. program and those decisions will not be second guessed in the absence of evidence of discrimination. "When reviewing the substance of a genuinely academic decision, courts should accord the faculty's professional judgment great deference." *Powell,* 364 F.3d at 88 (citing *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985)). By failing to meet RPI's requirements for reinstatement, plaintiff did not present evidence showing he was qualified to continue to be a Ph.D. student at RPI. McInerney has failed to prove by a preponderance of the evidence that RPI discriminated against him in violation of the ADA or the Rehabilitation Act him when it failed to change his student status to "active."

Therefore, the eighth and ninth causes of action will be dismissed.

## III. *CONCLUSION*

Title III and the Rehabilitation Act do not require a defendant to provide a plaintiff with his ideal or preferred accommodation. Rather, the statutes require that an individual with a disability be provided a reasonable accommodation so that he or she may participate equally in the good, service, or benefit offered by the place of public accommodation. RPI was not required to accommodate plaintiff's every preference. It was not required to expand its faculty or make adjustments to its policies, particularly after it determined that plaintiff was not meeting its academic requirements. RPI provided plaintiff extended time in which to take exams, tailored his Oral Department Qualifying Exam in a manner which best accommodated his needs, and granted him breaks

as requested during his Doctoral Qualifying Exam. That is not to say that RPI could not have done more. It is certainly not a model for other schools in this case. It is clear from the record that plaintiff was difficult to work with and was not well liked by some at RPI. As a result, his interactions with professors and administrators were likely more strained than those of other students. However, plaintiff has not proven by a preponderance of the evidence that he was denied the opportunity to participate in or benefit from RPI's services, programs, or activities, or was otherwise discriminated against by RPI, by reason of his disability.

Therefore, it is

ORDERED that

All of plaintiff's claims are DISMISSED and the complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.