06-5023-cv
Fulton v. Goord

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2008

(Argued: April 7, 2009          Decided: December 22, 2009)

Docket No. 06-5023-cv

--------------------------------------------------------x

EUNICE FULTON,

Plaintiff-Appellant,

-- v. --

COMMISSIONER GLEN S. GOORD, Department of
Correctional Services, THERESA K. DAVID, Director of
Classification & Movement, Department of Correctional
Services; STATE OF NEW YORK,

Defendants-Appellees.

--------------------------------------------------------x

B e f o r e :  JACOBS, Chief Judge, WALKER, and LEVAL, Circuit
Judges.

Eunice Fulton appeals the dismissal of her complaint by the United States District Court for the Northern District of New York (Gary L. Sharpe, Judge) for lack of standing and for failure to state a claim upon which relief can be granted. We hold that Fulton has standing to contend that the defendants engaged in disability-based discrimination in violation of the Americans with Disabilities Act and the Rehabilitation Act. We also conclude that the district court's analysis of the adequacy of Fulton's pleadings did not reflect the full scope of her claims and must be reconsidered.

VACATED and REMANDED.

SAMUEL J. LIEBERMAN, Bernstein Litowitz Berger & Grossman LLP, New York, NY, (Douglas F. Curtis, Shauna K. Friedman, Wilmer Culter Pickering Hale and Dorr LLP, New York, NY, on the brief), for Plaintiff-Appellant.

KATE H. NEPVEU, Assistant Solicitor General, (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, on the brief), for Andrew M. Cuomo, Attorney General of the State of New York, Albany, NY, for Defendants-Appellees.

JOHN M. WALKER, JR., Circuit Judge:

Eunice Fulton suffers from multiple sclerosis. Her illness prevented her from visiting her husband in an upstate New York prison, roughly 300 miles from her New York City home, as part of a state-run Inmate Visitor Program (IVP). Proceeding pro se, Fulton sued officials of the New York State Department of Correctional Services (DOCS), pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794(a), seeking relief for the defendants' asserted failure to accommodate her disability in administering the IVP. The United States District Court for the Northern District of New York (Gary L. Sharpe, Judge) dismissed Fulton's suit for both lack of standing and failure to state a claim. The

-2-

district court, however, was misguided in viewing Fulton's suit as consisting of claims solely based on the defendants' refusal to transfer her husband to a prison closer to New York City, when in fact the basis of Fulton's claim is broader:  the defendants' failure even to consider whether her disability could be reasonably accommodated.

**BACKGROUND**

Multiple sclerosis (MS) is a disease in which the body's immune system attacks the central nervous system, repeatedly injuring the nerves and ultimately causing them to degenerate. MS has no cure and can often lead to partial or complete paralysis, but medication can slow the disease's progression.

In 2005, twelve years after she was diagnosed with MS, Fulton was paralyzed in the lower left side of her body.  She required a wheelchair to move, and a health care professional to assist her with her daily needs.  Although she could stand on her own for short periods, her MS prevented her from traveling long distances.

In April 2005, Fulton's husband was convicted of two crimes and sentenced in New York state court to a prison term of two to four years.  In June 2005, upon his admission to a DOCS inmate processing facility, he asked to be housed in a prison near his wife because of her disability.  DOCS denied this request and, in

-3-

July 2005, transferred Fulton's husband to the Altona Correctional Facility, some 300 miles from New York City in DOCS's Clinton County "Hub Area." Soon thereafter, when he asked to be placed in a facility closer to New York City, DOCS told him that, under DOCS policy, he would have to spend two years in the Clinton Hub before he would be eligible for a transfer. The DOCS IVP permitted prisoners to be visited in prison by "friends and relatives," DOCS Directive No. 4403 § I (1993), but Fulton's MS made it impossible for her to visit her husband at the Altona prison.

In October 2005, Fulton wrote to defendant Glen Goord, DOCS Commissioner, told him of her disability, and, according to the complaint, "requested that reasonable accommodations be made to enable her to visit with her husband." (Compl. ¶ 15.) She asked that "consideration be given to transfer [sic] her husband" to somewhere closer to her. (Compl. ¶ 15.) Around that time, Fulton and her husband each also wrote to defendant Theresa David, DOCS Director of Classification and Movement, to "request[] reasonable accommodation" for Fulton "to participate in the visiting program." (Compl. ¶ 16.)

In November 2005, Fulton received a letter from David stating that, in light of the DOCS two-year transfer policy, Fulton's husband would need to stay in the Clinton Hub until at least July 2007. The letter did not mention Fulton's disability

-4-

or consideration of any other accommodation.

In December 2005, Fulton filed this lawsuit pro se against Goord, David, and the State of New York. Her complaint sought an injunction requiring the defendants to "provide reasonable accommodation [for her] to participate in the [DOCS] visiting program" and $75,000 in damages. (Compl. at 8.)

The district court dismissed Fulton's complaint. Fulton v. Goord, No. 1:05-CV-1622 (GLS/DRH), 2006 WL 2850601, at *1 (N.D.N.Y. Oct. 2, 2006). The district court held that Fulton lacked standing, because she had no "protected liberty interest" in visiting her inmate husband and therefore her "inability to take advantage of a DOCS visitation program does not constitute a redressable injury." Id. at *2. The district court concluded that, in any event, Fulton had failed to state a claim. Id. at *3.

This appeal followed. Because her husband has been released from prison, Fulton, now represented by counsel, seeks only monetary relief. She argues that she both has standing to proceed and has properly stated a claim. We agree that Fulton has standing, and we remand for the district court to reconsider whether she has stated a claim. We also grant Fulton leave to amend her complaint, to which the defendants consent.

**DISCUSSION**

-5-

## I. Fulton's Standing

We review questions of standing de novo. Comer v. Cisneros, 37 F.3d 775, 787 (2d Cir. 1994). "Because standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (internal quotation marks omitted).

The "irreducible constitutional minimum of standing," rooted in Article III's case-or-controversy requirement, consists of three elements: (1) an "injury in fact," by which is meant "an invasion of a legally protected interest"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood that "the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). The legally protected interest "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." Warth v. Seldin, 422 U.S. 490, 500 (1975) (internal quotation marks omitted). Accordingly, "standing is gauged by the specific common-law, statutory or constitutional claims that a party presents." Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 77 (1991).

Fulton sued under the ADA and the Rehabilitation Act.[1]  The ADA states, in relevant part, that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.  Similarly, the Rehabilitation Act states:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  The ADA provides "remedies, procedures, and rights . . . to any person alleging discrimination on the basis of disability in violation of section 12132," 42 U.S.C. § 12133, and the Rehabilitation Act does the same for "any person aggrieved" by disability-based discrimination, 29 U.S.C. § 794a(a)(2).  Because of the breadth of these provisions, we have held that ADA and Rehabilitation Act actions are not subject to any of the prudential limitations on standing that apply in other contexts.  See Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 47 (2d Cir. 1997) (concluding that

---

[1]  We note that Fulton's complaint raised only an ADA claim, and made no mention of the Rehabilitation Act.  The district court assumed that Fulton intended to bring a Rehabilitation Act claim as well.  We think this was a fair reading of Fulton's pro se complaint, because such complaints are to be construed liberally, Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001), and the same factual allegations generally will support both ADA and Rehabilitation Act claims, see Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003) (finding only "subtle distinctions" between the two acts).  The differences between the two acts are irrelevant to this appeal.

-7-

standing under these statutes should be defined as broadly as constitutionally permitted), overruled on other grounds by Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 171 n.7 (2d Cir. 2001). The ADA and Rehabilitation Act generously confer the right to be free from disability-based discrimination by public entities and federally funded programs and, in so doing, confer standing for persons claiming such discrimination to enforce that right. Fulton asserts that she was discriminatorily denied a reasonable accommodation for her disability in violation of her rights under the two acts. This is plainly an injury in fact that is sufficient to form the basis for Article III standing.

In arguing otherwise, the defendants, like the district court, misconceive Fulton's claim. The defendants argue that Fulton has no "legally cognizable interest in having her incarcerated spouse transferred to a facility she can more readily visit." (Appellee's Br. at 8.) Whatever the merit of such an argument, Fulton's complaint is not so narrow: The essence of Fulton's challenge is the defendants' refusal, in light of her disability, to provide her with, or even to consider, a "reasonable accommodation to participate in the visiting program." (Compl. ¶ 16.) The defendants' decision to house her husband in Altona is only one aspect of this larger issue and not necessarily dispositive, at least at this stage of the proceedings. Fulton's complaint rests on her right to be

free from disability-based discrimination, and the defendants fail to explain why a violation of <u>this</u> right, as distinct from any rights (if they exist) to inmate visitation or transfer, does not create an injury in fact.

The defendants effectively concede that if Fulton could show an injury in fact, she could demonstrate the other two requirements of standing:  a causal connection between her injury and the defendants' challenged conduct, and a likelihood of redressability.  Indeed, the complaint is unequivocal that the defendants' alleged discrimination caused her claimed injury, and that this litigation could remedy the harm.  Thus, we hold that Fulton has standing to pursue her ADA and Rehabilitation Act claims, and that the district court erred by concluding otherwise.

**II.  The Sufficiency of Fulton's Pleadings**

In addition to dismissing Fulton's suit on standing grounds, the district court dismissed the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  We review this dismissal <u>de novo</u>, "accept[ing] all factual allegations in the complaint as true and draw[ing] inferences from those allegations in the light most favorable to the plaintiff."  <u>Jaghory v. N.Y. State Dep't of Educ.</u>, 131 F.3d 326, 329 (2d Cir. 1997).  And we must construe <u>pro se</u> complaints liberally, "to raise the strongest arguments

-9-

that they suggest."  Green, 260 F.3d at 83 (internal quotation marks omitted).

To state a prima facie claim under either the ADA or the Rehabilitation Act, which are identical for our purposes, Fulton must allege:  "(1) that [s]he is a 'qualified individual' with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." Hargrave v. Vermont, 340 F.3d 27, 34-35 (2d Cir. 2003).  A "qualified individual" is

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).  A qualified individual can base a discrimination claim on any of "three available theories:  (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003).

The district court found Fulton's complaint to be deficient in two respects.  First, the district court concluded that Fulton was not a qualified individual, because "[t]he visitation program

-10-

applies to DOCS inmates, not members of the public or spouses."
Fulton, 2006 WL 2850601, at *3. Second, the district court held that, "even if Fulton could establish that she was a qualified individual, there are no facts alleged to suggest that the defendants' transfer policy is discriminatorily based on her disability." Id. Neither rationale is convincing.

With respect to whether Fulton is a qualified individual for the DOCS IVP, we find that she "meets the essential eligibility requirements" for the program. 42 U.S.C. § 12131(2). Nothing in the IVP regulations disqualifies Fulton from visiting a DOCS inmate through the program. See DOCS Directive No. 4403. And we disagree with the district court's characterization of the IVP as applying to inmates but not visitors. In different provisions, the IVP regulations refer variously to a visitor's "visitation rights," id. § VIII.C, "visiting rights," id. § VIII.F, and "visiting privileges," id. § IV.B.1. Moreover, the IVP regulations indicate that visitors and inmates separately possess these rights. See id. § VIII.B ("Contact visiting privileges may be suspended, limited, or revoked for either a visitor . . . or an inmate . . . .").

Tellingly, the defendants have chosen not to defend the district court's analysis of whether Fulton was a qualified individual for the IVP. Instead, the defendants argue that "what [Fulton] sought was not access to the general visitation program,

-11-

but the transfer of her inmate husband between DOCS facilities," and that only inmates are qualified for the transfer program. (Appellee's Br. at 17.)  As we have already discussed, however, this incorrectly characterizes Fulton's claim:  In addition to her request for her husband's transfer, Fulton sought "reasonable accommodations" that would "enable her to visit with her husband" through the IVP.  (Compl. ¶ 15.)  Because Fulton "meets the essential eligibility requirements" for the IVP, 42 U.S.C. § 12131(2), she is a qualified individual under the ADA and Rehabilitation Act.  The district court erred by concluding otherwise.  We note, however, that while all of an inmate's friends and relatives conceivably could be qualified individuals under the IVP, it does not follow that any accommodations found to be reasonable, and thus required, for a disabled spouse, would also be reasonable for a more remote disabled relative or acquaintance.  "'Reasonable' is a relational term:  it evaluates the desirability of a particular accommodation according to the consequences that the accommodation will produce."  Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995).  This requires "a fact-specific, case-by-case inquiry," Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995), "not only into the benefits of the accommodation but into its costs as well," Borkowski, 63 F.3d at 138.  With such a context-sensitive inquiry, what is reasonable might vary among qualified

-12-

individuals; a spouse's visit may trigger a different calculus than visits by others, resulting in different accommodations or perhaps no accommodation at all.

We are also unpersuaded by the district court's rationale for concluding that Fulton had not stated a claim even if she is a qualified individual. The district court reasoned that "there are no facts alleged to suggest that the defendants' <u>transfer policy</u> is discriminatorily based on [Fulton's] disability." 2006 WL 2850601, at *3 (emphasis added). But again, this reasoning rests on the mischaracterization of Fulton's claims that pervades the district court's analysis. As a result, the district court never addressed whether Fulton had sufficiently alleged that the defendants administered the IVP in a discriminatory fashion, despite this issue being at the core of her complaint. The district court did not appear to consider Fulton's allegation that, in addition to requesting her husband's transfer, she also requested reasonable accommodations.[2] A reasonable accommodation, if one existed, might have allowed Fulton to participate in the IVP without her husband being permanently

---

[2] Because Fulton contacted DOCS to request an accommodation, our focus is solely on DOCS's response. Our holding does not create any affirmative requirement for prisons to ascertain in advance the capacity and health of would-be visitors, and nothing in the IVP mandates such proactivity on the part of prison officials.

-13-

moved closer to New York City.[3]

"It is our settled practice to allow the district court to address arguments in the first instance." Farricielli v. Holbrook, 215 F.3d 241, 246 (2d Cir. 2000) (per curiam). Accordingly, we remand the defendants' motion for the district court to reconsider its analysis of the adequacy of Fulton's pleadings, in light of a fuller understanding of the scope of her claims. Without expressing a view as to whether Fulton has indeed stated a claim upon which relief can be granted, we note at this point only that her allegations cover a broader base of conduct than the district court appeared to realize. In remanding this case, we neither rule nor imply that any particular accommodation to Fulton's disability is reasonable and must be accorded. Rather, the defect in the district court's

---

[3] For example, it is not unusual for prisoners to be shuttled to urban centers for court appearances and prosecutorial interviews, and such a visit could also serve to accommodate a disabled spouse. Fulton herself posits that her husband could perhaps have been temporarily transferred "back and forth to a downstate facility accessible" to her for occasional visits. (Appellant's Br. at 34.) Other prisons have made similar short-term arrangements for disabled inmates. See Settlement Agreement Between the United States of America and Johnson County, Tennessee Sheriff's Department, App. ¶ 2(b)(1) (providing for short-term transfers "to and from" a jail with a more accessible "site of visitation"), available at http://www.usdoj.gov/crt/foia/tenjohnsonctysheriff.html; accord Settlement Agreement Between the United States of America and Harrison County Sheriff's Department, Iowa, App. ¶ 2(b)(1) (same), available at http://www.usdoj.gov/crt/foia/harrisonia.htm. Absent transporting the prisoner or the visitor, there are also now electronic means for visits, such as via a "Skype"-style program over the internet. See generally Skype, http://www.skype.com (offering software that enables internet video and voice conferencing). In noting that the possibility of a reasonable accommodation is not unrealistic, we express no view on the reasonableness of any potential accommodation in the instant case. The DOCS likely has other commonplace practices that Fulton might benefit from, and it is for the DOCS, in the first instance, to determine whether any of them would be a reasonable accommodation in this case.

-14-

determination, which requires remand and reconsideration, is its failure to recognize that, over and above her request for a transfer of her husband to a closer facility, Fulton was asking for DOCS consideration of other accommodations to determine whether any might be reasonably implemented.

**III.  Leave to Amend the Complaint**

Fulton has requested leave to amend her complaint, to bring claims against DOCS and DOCS employees in their official capacities.  We are normally accommodating to motions for leave to amend pro se complaints, see Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991), but may deny them "when amendment would be futile," Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006).  Fulton now seeks only money damages, and the defendants' defense of Eleventh Amendment immunity may render Fulton's requested amendment futile.  Kentucky v. Graham, 473 U.S. 159, 169 (1985), holds that in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment.

However, Fulton may still succeed if the defendants' Eleventh Amendment immunity has been abrogated or waived.[4]  This question does not have an obvious or settled answer, and the

---

[4]    There are at least colorable arguments as to why immunity might have been abrogated or waived in this particular case.

-15-

defendants ask us to avoid deciding it.  Indeed, the defendants consent to granting Fulton leave to amend her complaint, as long as their immunity defense is preserved.  Fulton does not state that she would be prejudiced by this approach, which comports with our need to "avoid reaching constitutional questions in advance of the necessity of deciding them."  Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 445 (1988).  As a result, we grant Fulton leave to amend her complaint without prejudice to the defendants' assertion of the Eleventh Amendment defense at a later point in the proceedings.

**CONCLUSION**

For the foregoing reasons, we VACATE the dismissal of Fulton's complaint and REMAND for the district court to reconsider the sufficiency of the pleadings.