STATE OF VERMONT

SUPERIOR COURT                                        CIVIL DIVISION

Windham Unit                                          Docket No. 204-6-17 Wmcv

---

Robert L. Merriam, Jr.,

     Plaintiff

     v.

The State of Vermont Department of Public
Safety, and State of Vermont,

     Defendants

---

## Opinion and Order Granting Defendants' Motion to Dismiss

### I.    Introduction

This is an action for discrimination on the basis of disability and negligence brought against the State and the Department of Public Safety, which oversees Vermont's medical marijuana licensing program. In Count One, Mr. Merriam, who has been diagnosed with Post-Traumatic Stress Disorder, alleges that Defendants discriminated against him by denying his application for a medical marijuana license. In pleading a claim for discrimination he explains that Defendants denied his application because it stated that he suffers from severe emotional pain, rather than physical pain. See 9 V.S.A. §4502(c) (Vermont's anti-discrimination in public accommodations statute); 18 V.S.A. §4472(4)(C) (defining eligibility for participation in Vermont's medical marijuana program—in relevant part—as medical patients receiving treatment for "severe pain.").[1] Mr. Merriam alleges in Count Two the negligent denial of his medical marijuana application. He seeks monetary damages for his claims, but no equitable relief. Defendants have moved to dismiss the complaint for failure to state a claim on which relief can be granted. For the reasons explained below the Court agrees that Plaintiff has failed to state a claim.

---

[1] The definition of "Debilitating Medical Condition" has expanded since this case arose. Now applicants who suffer post-traumatic stress are explicitly eligible to obtain a medical marijuana license. 18 V.S.A. §4472(4)(B). This action for damages, however, does not involve Plaintiff's current eligibility for medical marijuana; it only concerns the denial of his application under a previous iteration of the statute. At that time, in 2014 and 2015, patients with PTSD or otherwise suffering entirely emotional pain-symptoms could only have obtained a license, if at all, under the "severe pain" subsection. See 2017, No. 65, § 1. At that time this was codified at 18 V.S.A. §4472(4)(B), but currently is found in subsection (C). The Court notes for ease of reference to the current greenback statute volumes, that the operative statute in this opinion (§ 4472(4)(C)), was, at the time this case arose, codified in subsection (B) (§ 4472(4)(B) (2014)). The Court notes further that although the statute currently uses the term "chronic pain" to define eligibility, at the time of this case the section used the words "severe pain."

## II. Standard of Review

Vermont trial courts shall dismiss a claim if, based on the allegations in the complaint, there exist no facts or circumstances that would entitle plaintiff to relief under the law. See *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002). This is a high standard because the purpose of a motion to dismiss is to test the law of a claim, not the underlying facts that support it. *Id.* So, the court must assume the truth of all factual allegations in the complaint and any reasonable inferences that might be drawn therefrom, in favor of the plaintiff, and it must assume that any contravening factual assertions in defendant's pleadings are false. *Richards v. Town of Norwich*, 169 Vt. 44, 49 (1999).

## III. Facts

Robert L. Merriam, Jr. has been diagnosed with post-traumatic stress disorder (PTSD), anxiety, and depression. Compl. at ¶4. His symptoms are adrenaline rushes that cause heart palpitations, shortness of breath, nausea, and diarrhea. *Id.* at ¶5. He has severe gastrointestinal pain and headaches when left untreated. *Id.* The most effective treatment for his condition has included, at least in part, a dose of medical marijuana. *Id.* at ¶7.

Mr. Merriam first applied for a medical marijuana license from the Vermont Marijuana Registry[2] on April 16, 2014. *Id.* at ¶13. In that application he described his debilitating medical condition as "chronic emotional pain of PTSD," which manifested with "severe pain." *Id.* This application was denied because Plaintiff had "not identified a statutorily-recognized debilitating medical condition." *Id.* at ¶15. On June 4, 2014, the Marijuana Review Board, which hears application appeals, upheld that denial. *Id.* at ¶17.

About 3 weeks later, on June 26, 2014, Mr. Merriam re-applied, this time describing his condition as "depression" and "anxiety" and asserting that he suffered "severe pain." *Id.* at ¶18. The Registry granted this application. *Id.* at ¶19. He renewed his application to the Registry the following year, describing his debilitating medical condition as "depression/anxiety" and stating that his symptoms were "severe pain." *Id.* at ¶22. On July 7, 2015, a Registry worker contacted Plaintiff's primary care provider, Dr. Tony Blofson, seeking clarification as to "what severe physical pain Mr. Merriam suffers from (i.e. back, arm, leg)." *Id.* at ¶23. Dr. Blofson responded that Plaintiff's pain is from depression and is not "physical" or "bodily." *Id.* at ¶24. The Registry accordingly denied Plaintiff's application. It explained the denial by referring to the statute requiring that a patient suffer "severe pain," interpreting this to mean physical, not emotional pain. *Id.* at ¶25. Plaintiff appealed but was denied by the Review Board on October 6, 2015. *Id.* at *Id.* at ¶29. Plaintiff re-applied in November 2015, specifying his physical symptoms of pain (presumably his stomach and head pain), and was approved on November 16, 2015. *Id.* at ¶30.

Plaintiff submitted a claim of discrimination to the Vermont Human Rights Commission. In January 2017, the Commission determined that there were "reasonable grounds to believe" that Defendants had illegally discriminated against Plaintiff, violating the Vermont Fair Housing and Public Accommodation Act. *Id.* at ¶¶31-33. Two staff members explained that by inserting the word

---

[2] In service of brevity, the Court will refer to the Vermont Marijuana Registry as the "Registry."

"physical" into the eligibility statute, the Registry "disadvantages mentally or emotionally disabled applicants." *Id.* at ¶32.

## IV.    Claim One for Disability Discrimination Fails to State a Claim.

Vermont law incorporates the analytical framework of the Americans with Disabilities Act (ADA). Compare 42 U.S.C. §12182(b)(2)(A)(ii) with 9 V.S.A. §4502(c) (Vermont Public Accommodations Act (VPAA)); see also, *Bhatt v. University of Vermont,* 2008 VT 76 ¶14 184 Vt. 195. And, the VPAA imposes no greater requirements upon Vermont government entities than federal law does under the ADA. 9 V.S.A. §4500(b). Here, the Court analyzes Plaintiff's claim under Title II of the ADA, which prohibits discrimination by government entities in the provision of services.[3] To state a Title II claim, a plaintiff must allege the following elements:

(1) he or she is a qualified individual with a disability;

(2) he or she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against; and

(3) the exclusion, denial of benefit, or discrimination was by reason of plaintiff's disability.

*Fulton v. Goord,* 591 F.3d 37, 43 (2d Cir. 2009). A Title II claim may be further refined to conform to traditional theories of discrimination: intentional discrimination, disparate impact, or failure to make reasonable accommodations. *Todd v. Carstarphen,* 236 F. Supp. 3d 1311, 1326–27 (N.D. Ga. 2017) (citing 28 C.F.R. §35.130(b)(7)); *Currie v. Grp. Ins. Comm'n,* 147 F. Supp. 2d 30, 36 (D. Mass. 2001). Here Plaintiff must state a claim for intentional discrimination because claims for money damages, as alleged here, require a showing of intentionally discriminatory acts. See *Duvall v. Cnty. Of Kitsap,* 260 F.3d 1124, 1338 (9th Cir. 2001).

### a.    Plaintiff failed to allege that defendant had a discriminatory mental state.

There is a circuit split on what mental state applies to claims of intentional disability discrimination: most use the "deliberate indifference" standard, but some describe the requisite mental state as "discriminatory animus." See *LeClair v. Massachusetts Bay Transportation Authority,* 300

---

[3] Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Title I is for employment discrimination cases, which is of no consequence here. And though Plaintiff admits that Title III is not the source of his claim, he argues that he has successfully stated such a claim when opposing Defendants' motion to dismiss. Pltf's Opp. at 8-9. The Court believes that Title III is inapplicable here. Under the facts of the complaint, Plaintiff can only demand monetary damages; yet he cannot recover money damages in a Title III case. See *Powell v. Nat'l Bd. of Med. Examiners,* 364 F.3d 79, 86 (2d Cir. 2004). Therefore, the Court concludes that no claim under Title III has been or can be asserted. In reaching this conclusion, the Court recognizes that it can award relief even if it is not requested in the complaint. Here, however, it is difficult to see what equitable remedies there could be. See V.R.C.P. 54(c); *Johnson & Dix, Inc. v. Springfield Fuels, Inc.,* 131 Vt. 156 (1973) (no relief is warranted if not demanded in the complaint and not "within the ambit of the controversy litigated."). Plaintiff currently has a medical marijuana license after going without one for two periods of about a few months in 2014 and 2015. Since he obtained his license, the Legislature has amended the law to explicitly make eligible persons such as Plaintiff who suffer from PTSD. Moreover, per the complaint, Plaintiff suffers from symptoms, which, though not mentioned on his applications that are the subject of these proceedings, make him eligible for marijuana under the old "severe (physical) pain" standard.

3

F. Supp. 3d 318, 325-26 (D. Mass 2018) (collecting cases). Because the VPAA is a remedial statute that must be interpreted broadly, and because the Second Circuit adheres to this standard, the Court hereby applies the "deliberate indifference" standard. This has two elements: (1) knowledge that harm to a protected right is "substantially likely" and (2) failure to act on that likelihood. *Duvall,* 260 F.3d at 1139.

The complaint not only fails to allege deliberate indifference, it does not allege any mental state on the part of defendants when they restricted medical marijuana licenses to those who suffer severe physical pain. Therefore, the claim is dismissed. V.R.C.P. 12(b)(6).

### b. Plaintiff was not a "qualified individual" to receive medical marijuana.

Defendants correctly concluded that the Legislature intended only for patients with severe *physical* pain to be licensed for medical marijuana.[4] Therefore, the complaint fails to state a claim under the first element of disability discrimination because Plaintiff was not a "qualified individual."

### i. The Vermont medical marijuana is ambiguous.

The primary goal when interpreting a statute is to effectuate the intent of the Legislature. *Shires Hous., Inc. v. Brown,* 2017 VT 60, ¶9. Courts presume that the Legislature intended the plain, ordinary meaning of the words that it used. *Wesco, Inc. v. Sorrell,* 2004 VT 102, ¶ 14, 177 Vt. 287. But if a law is ambiguous, then Courts turn to tools of statutory construction to determine intent. *In re Hinsdale Farm,* 2004 VT 72, ¶5, 177 Vt. 115. This process demands that Courts, "consider the entire statute," including subject matter, rationale, the spirit of the law, legislative history, and circumstances surrounding a statute's enactment. *Id.* "Severe pain" appears in the medical marijuana statute as follows:

> [a <u>Debilitating Medical Condition</u>, qualifying a patient for medical marijuana, is] a disease, medical condition, or is a treatment that is chronic, debilitating, and produces severe, persistent, and one or more of the following intractable symptoms: cachexia or wasting syndrome; *severe pain*; severe nausea; or seizures.

18 V.S.A. §4472(4)(B) (2014) (emphasis supplied). The Court finds two ambiguities here.

First, the word "pain" has many definitions. See *Black's Medical Dictionary,* pp. 625-27 (13th ed. 1974). The dictionary on which Plaintiff has relied confirms this, supplying six definitions:

---

[4] Defendants argue that they have reasonably interpreted Vermont law, and therefore could not have acted in a discriminatory fashion. Def's Mot. at 7. Although the Court believes that Defendants' interpretation of the medical marijuana law is reasonable, any such interpretation could still, logically, be motivated by discriminatory animus. Therefore, the Court's analysis here focuses on the actual meaning of the statute, not reasonableness.

This is also consistent with administrative law principles: here Defendants effectively promulgated a rule of general application (that only those who suffer severe *physical* pain may obtain medical marijuana) without going through the legislatively-approved administrative channels. Under black letter administrative law, such an interpretation is due deference "proportional to its power to persuade." *United States v. Mead Corp.,* 533 U.S. 218, 235 (2001) (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944)).

1. punishment.
2. localized physical suffering associated with bodily disorder; *also*: a basic bodily sensation induced by a noxious stimulus received by naked nerve endings, characterized by physical discomfort...
3. acute mental or emotional distress or suffering: grief.
4. the throes of childbirth.
5. trouble, care, or effort taken for the accomplishment of something.
6. one that irks or annoys or is otherwise troublesome.

See *Webster's* Ninth New *Collegiate Dictionary*, 846 (1985). The Legislature did not state whether the term "severe pain" was meant to include all or some of these meanings. For the Court to make this determination it must undertake more analysis than can be found in a dictionary. The second ambiguity is that, viewed as a whole, the statute combines many undefined terms. Indeed, it makes eligible for medical marijuana licensing, all patients who experience "severe pain" as an "intractable" symptom of a chronic "disease, medical condition, or its treatment." Yet none of these medical terms-of-art are defined, making the statute ripe for analysis with the panoply of tools of statutory construction. See *Hinsdale Farm*, 2004 VT 72 at ¶5.

### ii. The Vermont medical marijuana statute was intended to only apply to physical pain.

Using the tools of construction, it is clear to this Court that patients suffering severe physical pain were meant to be eligible for medical marijuana, not those who suffer only emotional pain. "Severe pain" appears in the statute within a list of ailments, all of which involve physical pain, sensations, or manifestations, and none of which involve entirely emotional pain. See 18 V.S.A. §4472(4)(B) (2014) ("cachexia or wasting syndrome; *severe pain*; severe nausea; or seizures."). Under the canon of statutory interpretation that the meaning of an ambiguous term can be derived from terms that surround it in a list, the Legislature must have meant "severe *physical* pain."

Even if the Court were to ignore the list in which the word "pain" has been used, the most common meaning of the word "pain," unmodified, is physical pain. Other forms of pain, such as emotional pain, psychosomatic pain, or the throes of childbirth (see definitions above) typically use modifying language, are used in a context that signal what other form of pain is meant, or are described with words other than pain (e.g., grief, stress, suffering, or throes). But, physical pain, for example, in a joint, or from an injury, is commonly referred to simply as "pain."[5]

Finally, the Legislature would likely have created another, separate definition if it had intended to allow purely emotional pain symptoms to qualify for coverage under the statute. In fact, this is exactly what has effectively happened. See 2017, No. 65.

---

[5] Consider the following sentence: "As I lay on the ground writhing in pain, I thought about how I had gotten here." If the author intended to convey emotional pain, or the pain of child birth, the reader would expect there to be modifying language, or another word instead of simply "pain." Thus, "pain" alone commonly connotes physical pain.

Plaintiff argues that there are several illnesses that can be treated under the medical marijuana statute, which, among other symptoms, involve emotional pain. Pltf's Opp. at 5. But this argument is directed at a separate subsection that does not contain the term "severe pain," · diminishing its importance to the task here. Compare 18 V.S.A. §4472(4)(A) with *id.* at Sub (C). Moreover, simply because some eligible patients suffer symptoms that *include* emotional pain, it does not follow that the Legislature intended to permit persons who *only* suffer emotional pain to be eligible. As shown above, it did not. Therefore, Defendants' interpretation was correct.

### iii. Plaintiff was not a "qualified individual" for receipt of a medical marijuana license.

The first element of a Title II claim under the ADA is that Plaintiff is a "qualified individual" with a disability. *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). This is someone who "with or without reasonable modifications to the rules, policies, or practices... meets the essential eligibility requirements for the receipt of services or the participation in programs... provided by a public entity." 42 U.S.C. §12131(2). As explained above, the essential eligibility requirements of the Vermont medical marijuana licensure program, at the time that Plaintiff's application was denied, was that those who apply under the "severe pain" provision must suffer severe physical pain. In Plaintiff's application, denied in July 2015 by the Registry and October 2015 by the Review Board, his doctor stated that he only suffered from emotional pain. Compl. at ¶24. And his April 2014 application specified that his pain was emotional in nature. *Id.* at ¶13. Therefore, he was not a qualified individual "for ... participation in" the Vermont medical marijuana program "with or without reasonable modifications to rules, policies or practices." 42 U.S.C. §12131(2). This claim is dismissed because Plaintiff cannot allege that he was a "qualified individual."

### c. There is no Title II violation where the state discriminates based on pain type, rather than disability.

Medical marijuana licenses are equally available to persons with disabilities and persons who do not have disabilities: those who suffer severe physical pain are eligible to get a license; those who suffer pain that is entirely psychological cannot. Such a policy does not violate anti-discrimination law, which prohibits discrimination on the basis of *disability*, not on the basis of pain type. See 9 V.S.A. §4502(c) (prohibiting the "deni[al of] the benefit of the services, facilities, goods, privileges, advantages, benefits, and accommodations of, and subjected to discrimination by any place of public accommodation *on the basis of... disability*.). The complaint, which asserts a violation of Section 4502(c), omits the italicized language. See Pltf's Opp. at 9; Compl. ¶40.[6] Yet, "the exclusion, denial of benefit, or discrimination" must have been "by reason of plaintiff's disability" under the third essential element of a claim for disability discrimination. *Fulton*, 591 F.3d at 43. Therefore, Plaintiff has failed to state a claim upon which relief can be granted.

---

[6] The complaint admits strong evidence that Defendants have not discriminated on the basis of Plaintiff's disability: they granted his application in November 2015. There, Plaintiff fully described the symptoms that he suffers. Compl. ¶30. If his prior denial had been due to unlawful animus, it would be odd, indeed, for the Registry to turn around and grant his successor application. Perhaps this explains the omission of the above words from the complaint.

6

Defendant argues that it is lawful for the state to discriminate in its provision of services based on disability type. Def's Mot. at 8. Plaintiff purports to agree at first. Pltf's Opp. at 7-8. But, Plaintiff then contradicts this admission, asserting that "[t]he Registry is accessible to persons *without* disabilities who suffer from severe pain that happens to be physical; it must therefore be accessible to persons *with* disabilities who suffer from severe pain, even if that pain is emotional." *Id.* at 8. This argument—unsupported by citation to legal (or factual) authority—is, while artfully crafted, quite wrong. First, as explained above, pain type and disability are not the same. And even if pain type could be said to encompass disability, it is legal for the government, when providing benefits, to discriminate *among* persons with disabilities. *Traynor v. Turnage*, 485 U.S. 535, 549 (1988) (explaining that nothing in the precursor statute to the ADA "requires that any benefit extended to one category of [persons with a disability] also be extended to all other categories of handicapped persons.").[7] Therefore, Plaintiff's argument—that Defendants' interpretation is discriminatory because physical-pain sufferers who do not have a disability benefit from it and emotional-pain sufferers who have a disability are prejudiced—does not assert a cause of action for disability discrimination.

V.  **Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted Under Count Two for Negligent Denial of Medical Marijuana Card Application.**

Plaintiff alleges in the complaint that Defendants breached their duty to exercise reasonable care in the execution of the medical marijuana statute, causing him damage in the form of physical and mental pain, shock, distress, loss of enjoyment, loss of earning capacity, and the incursion of medical expenses. Compl. at ¶¶42-45. Defendants have moved to dismiss, asserting sovereign immunity as a defense. Plaintiff's negligence claim is both inadequate as a matter of law and barred by sovereign immunity.

a.  **Defendants correctly interpreted Vermont law, and therefore could not have done so negligently.**

Initially, the Court holds that because Defendants have correctly interpreted Vermont law (see Section IV.b. above), the Court has necessarily already held that there is no breach of any duty here. After all, a correct interpretation of the law cannot logically be said to have been arrived at negligently in any fashion that could proximately cause damage to Plaintiff. In laymen's terms, the state cannot be sued for its employees having done their jobs correctly.

b.  **Plaintiff's claim for negligence is barred by sovereign immunity.**

Even if Defendants could be said to have breached a duty here, sovereign immunity bars Plaintiff's claims. Sovereign immunity is a government's immunity from suit in its own courts absent consent to be sued. *Black's Law Dictionary*, 766 (8th ed. 2004). In Vermont, the Tort Claims Act governs whether the state has consented to be sued. See 12 V.S.A. §5601(a). This statute holds that

---

[7] This point is uncontested in the briefing. Nevertheless, the Court recognizes that there is conflicting U.S. Supreme Court authority. Compare *Traynor* with *Olmstead v. Zimring*, 527 U.S. 581 (1999). Even if the Court adopted the rule in *Olmstead*, however, Plaintiff does not assert intentional discrimination. See Pltf's Opp. at 7-8 (distinguishing Defendants' authorities because they do not include cases such as this where, according to Plaintiff "the benefit of access… was accorded to some categories of persons *without* disabilities to the exclusion of the categories of persons *with* disabilities to which Plaintiff belonged."). Indeed the complaint would still fail to adequately state a claim for relief, lacking needed allegations of intentional discrimination to obtain the relief sought. *Powell*, 364 F.3d at 86.

to clear the sovereign immunity bar, a plaintiff must bring an action in which the state is purportedly "liable for injury to persons or property or loss of life caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner, and to the same extent as a private person would be liable to the claimant..." *Id.* This is colloquially referred to as "private analog analysis."

Here Defendants were engaged in overseeing the state's medical marijuana licensing program. Plaintiff argues, citing *Rochon v. State*, that "negligence itself" is the private analog of his claim. Pltf.'s Opp. at 14. He then suggests that his claim is similar to a claim against a pharmacy for the negligent dispensing of medication. *Id.* at 15. This fails to recognize that the state was engaged in the regulatory act of licensing persons to obtain a medicine that is otherwise an illicit substance. This was not the dispensing of medication itself. Licensing the use of highly regulated substances, unlike the placing of warning signals on a public road, or investigating reports of child abuse, is indeed uniquely governmental in nature; after all, by definition only the government can license the use of otherwise-illegal substances. Compare *Peters v. State*, 161 Vt. 582, 583 (1993) and *Sabia v. State*, 164 Vt. 293, 301 (1995) with *Amy's Enters. V. Sorrell*, 174 Vt. 623 (2002) (mem.) and *Powers v. Office of Child Support*, 173 Vt. 390 (2002).

## VI.    Conclusion

Plaintiff applied for a medical marijuana card from the Department of Public Safety, which administers the Vermont Medical Marijuana Registry. His 2014 application stated that his pain was "emotional" in nature and his doctor admitted the same in his 2015 application. The Registry denied these applications, leaving him without a license for his needed medication. Though this is unfortunate, nevertheless, Plaintiff cannot maintain a suit for any damage he suffered during the several months that he was without a license. After all, the Registry cannot be faulted for omissions in his applications. And, in denying these applications the Registry did not discriminate against persons with disabilities; it correctly effectuated the intent of the Legislature. Plaintiff's lawsuit is hereby dismissed.

---

Michael R. Kainen
Superior Court Judge