17-3940
*Pehush v. Ashworth*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of December, two thousand eighteen.

Present:
> ROBERT A. KATZMANN,
> *Chief Judge*,
> GUIDO CALABRESI,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges*.

_____

SHARON PEHUSH,

> *Plaintiff-Appellant*,

GEORGE PEHUSH, E.P., minor child, J.P., minor child,

> *Plaintiffs*,

> v.                                                          No. 17-3940

DETECTIVE JULIA ASHWORTH, sued in her individual capacity, TOWN OF WALLKILL,

> *Defendants-Appellees*,

TOWN OF WALLKILL, POLICE DEPARTMENT, CHIEF ROBERT HERTMAN, sued in his individual capacity, THE ARC OF ORANGE COUNTY, DIANE LENTINO, AMY BORDOWSKI, CHRIS FORTUNE, CEO THE ARC OF ORANGE COUNTY, AKA CHRISTOPHER FORTUNE, ROSEMARY CAPUTO, NEWS 12 HUDSON VALLEY, DANEYA CROSBY, TRACY FEIL, JOHN/JANE DOES, each of whom are members of the Town of Wallkill

1

Police Department, sued in their individual capacity,

*Defendants*.

───────────────────────────────────

For Plaintiff-Appellant:          STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP (Scott A. Korenbaum, New York, NY, *on the brief*), New Paltz, NY.

For Defendants-Appellees:          JAMES A. RANDAZZO, Portale Randazzo LLP (Drew Sumner, Sumner Law LLP, *on the brief*), White Plains, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Smith, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and **REMANDED**.

Sharon Pehush appeals a judgment of the United States District Court for the Southern District of New York granting defendants' motion for summary judgment on all claims. For the following reasons, we conclude that there are genuine, material disputes of fact, and so vacate that judgment and remand for trial of appellant's false arrest claims and consideration by the district court of whether material, genuine disputes otherwise remain as to her malicious prosecution claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

On April 2, 2014, the Town of Wallkill Police Department received a phone call from Diane Lentino, the Director of Education at Orange AHRC ("AHRC"), who reported that she was notified that morning that a teacher at the school had abused a special needs child, E.H., a few days earlier. Several police officers, including Detective Julia Ashworth, responded to the call. The officers interviewed and received written, sworn statements from Lentino and Tracy Feil, AHRC's teacher-in-charge. Lentino relayed to the officers what she had been told by a teaching assistant named Daneya Crosby, and Feil relayed what Lentino had told her. The police

then spoke with Crosby, and Detective Ashworth prepared a sworn statement that Crosby reviewed and signed.

Crosby reported that, on March 28, 2014, she went to AHRC to work and was assigned to Pehush's classroom. She arrived around 9:15 and immediately noticed E.H. "sitting by herself at the op[p]osite side of the room with a divider on the desk so she couldn't see the other kids." App. at 544. Half an hour after Crosby arrived, another assistant, Giuseppina Corrado, asked Pehush to work with E.H., but Pehush refused. Crosby also stated that Pehush gave E.H. lunch around 12:30 or 1:00 when the other children ate around 11:45, and that Pehush did not allow E.H. to work with the speech therapist or go to the gym with the other children. Finally, Crosby alleged that E.H. was given her lunch "still sitting in a dirty diaper" because, while Crosby heard someone claim that E.H. did not need her diaper changed, no one ever checked. *Id.* at 544-45. Crosby said she changed E.H.'s diaper shortly before the end of the school day at 2:00 and that it was "soaking wet." *Id.* at 545. The following day, Ashworth had a conversation with an unidentified Assistant District Attorney who, Ashworth said, told her that Crosby's account "fit the criteria of Endangering the Welfare of a Child," and advised that she call the New York State Central Justice Center for a reference to Child Protective Services, which she did. *Id.* at 411-12.

On April 4, Detective Ashworth interviewed Pehush at the police station. Pehush secretly recorded this interview on her cell phone. In the interview, Pehush said that she sat E.H. at a separate table because E.H. repeatedly tossed her work on the floor and interfered with other children, and later moved a rolling bookshelf and set up a cardboard divider to prevent E.H. from throwing her toys and to help her focus. Pehush said she regularly interacted with E.H., they could see each other, and that E.H. was never distressed. Pehush also said that students' diapers are changed at least three times a day, unless they are not soiled, and that she thought Corrado had changed E.H.'s diaper that day. However, Pehush confirmed that E.H. did not eat her lunch with the rest of the students or go to the gym, claiming that she was working with E.H. during

3

those times. She also confirmed that she asked the speech therapist to reschedule E.H.'s appointment, but claimed that such sessions were often moved and that the therapist was happy to reschedule. After approximately an hour, Detective Ashworth left the interview. She came back a few minutes later and told Pehush that she had spoken with the District Attorney's office, that her actions constituted a violation of New York Penal Law § 260.10(1), which prohibits endangering the welfare of a child, and that they would charge her. Ashworth placed Pehush under arrest. Six months later, the criminal charges were dismissed. Both Pehush and Corrado, however, lost their jobs.

Pehush brought this suit in April 2015. She makes claims against Detective Ashworth in her individual capacity for false arrest and malicious prosecution under both New York law and 42 U.S.C. § 1983, and makes a state law false arrest claim against the Town of Wallkill under a theory of *respondeat superior*. The parties consented to proceeding before Magistrate Judge Lisa Smith, who, in a November 8, 2017 opinion, granted the defendants' motion for summary judgment on all counts. This appeal timely followed.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a district court's grant of summary judgment *de novo* and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Estate of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016).[1]

A finding of probable cause would defeat Pehush's false arrest claims under both 42 U.S.C. § 1983 and New York state law. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Generally, "probable cause to arrest exists when the officers have knowledge or reasonably

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* In addition, even if Detective Ashworth arrested Pehush without probable cause, Pehush's claims against Detective Ashworth fail if she is entitled to qualified immunity. *Jenkins v. City of New York*, 478 F.3d 76, 86-87 (2d Cir. 2007). Qualified immunity protects public officials from liability for civil damages if it was objectively reasonable for the officials to believe that their actions did not violate clearly established law. *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is an affirmative defense for which Detective Ashworth bears the burden of proof. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013).

Defendants claim, and the district court agreed, that Detective Ashworth had at least arguable probable cause to arrest Pehush for violation of N.Y. Penal Law § 260.10, which prohibits, in relevant part, "knowingly act[ing] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old." The conduct need not actually harm a child, as long as "harm was likely to occur, and not merely possible," and the defendant was "*aware* that the conduct may likely result in harm to a child." *People v. Hitchcock*, 780 N.E.2d 181, 183 (N.Y. 2002). We disagree with the district court and conclude that there are material, genuine disputes regarding what Detective Ashworth knew at the time of Pehush's arrest that preclude summary judgment.

A key question in this case is what Detective Ashworth had reason to believe when she arrested Pehush. Defendants and the district court rely on the three sworn statements, but Detective Ashworth knew that Lentino and Feil were not eyewitnesses, so their statements should have carried less weight than Crosby's. Because Crosby was not deposed, the only

evidence of what she told Detective Ashworth is her sworn statement and Detective Ashworth's testimony. As to the former, while Crosby reviewed and signed the statement, Detective Ashworth drafted it. As to the latter, whether to credit that testimony is for a jury to decide. *See Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003).

What weight to give Crosby's statement and Detective Ashworth's testimony is also an issue for the jury because there are reasons to doubt Detective Ashworth's credibility. Detective Ashworth's report memorializing her interview with Pehush is at best inaccurate and at worst intentionally misleading. According to the report, Pehush said that she gave E.H. her lunch "[j]ust prior to getting on the bus at the end of the day." App. at 553. In fact, Pehush repeatedly insisted that E.H. received her lunch at 12:30, an hour and a half before the end of the five-hour school day. The report also states that Pehush "figured she was justified in secluding [E.H.] for the entirety of the day" because E.H. "was apparently throwing a small lego in the room early in the morning." *Id.* at 553. In fact, Pehush said that E.H. consistently threw things and refused to follow directions, so she was separated to help her and the other children focus.[2]

Furthermore, there is evidence in the record suggesting that Detective Ashworth arrested Pehush based only on Lentino's and Feil's secondhand reports and ignored later, exculpatory statements from Crosby, an actual eyewitness. Most importantly, while neither Lentino nor Feil made any mention of it, Detective Ashworth testified that Crosby told her that Pehush worked with E.H. throughout the day, and Crosby's sworn statement that E.H. "was kept in the room with only" Pehush when the other students went to the gym, *id.* at 544-45, supports that claim. The district court mistakenly assumed that Detective Ashworth had only Pehush's word that she did not abandon E.H. in the corner. In fact, Crosby herself told Detective Ashworth that Pehush

---

[2] Were the jury to find Detective Ashworth not credible, it could also reasonably discount her conversation with the ADA. A reasonable jury could infer that Detective Ashworth misrepresented and omitted relevant facts to the ADA just as she later did in her report memorializing her interview with Pehush.

worked with E.H. throughout the four-and-a-half-hour period in question. Notably, this material evidence appears nowhere in the short statement that Detective Ashworth drafted.

Likewise, it is undisputed that Crosby did not tell Detective Ashworth that she saw E.H. cry or look upset, as one would expect from a child held isolated in a corner. Indeed, Crosby never even checked on E.H., as one would expect if she saw such cruel treatment as Lentino and Feil described. Detective Ashworth also knew that Crosby did not contact the police and that she waited five days to even report what she saw to Lentino. The district court found that it was reasonable for Detective Ashworth to rely on Crosby's, Lentino's, and Feil's opinions to conclude that Pehush's conduct was likely to harm E.H., but a reasonable juror could find that Detective Ashworth knew, or should have known, that this was only Lentino and Feil's conclusion. According to Detective Ashworth, Crosby "just [said] that she thought [Pehush's conduct] was inappropriate." *Id.* at 401.

Detective Ashworth also inexplicably failed to speak with Corrado, the only other eyewitness, and never asked Crosby to recreate the physical circumstances of E.H.'s separation, which are only briefly described in Crosby's sworn statement. There is thus no evidence that Detective Ashworth had reason to believe that the barriers blocked more than E.H.'s view of the other students. While Detective Ashworth had no obligation to investigate further if she already had probable cause, *see Panetta v. Crowley,* 460 F.3d 388, 398 (2d Cir. 2006), her failure to take these easy investigative steps supports an inference that she had made up her mind based only on Lentino's and Feil's secondhand reports.[3]

These disputes are material. Viewing the evidence in the light most favorable to the plaintiff, a reasonable juror could find that Detective Ashworth knew that Pehush was providing

---

[3] Lentino and Feil also said that E.H. did not eat her lunch until the end of the day, which Detective Ashworth appeared to have accepted, given her reference to that information in her summary of her interview with Pehush. But Crosby told Detective Ashworth that Pehush gave E.H. her lunch between 12:30 and 1:00.

E.H. with regular, one-on-one attention throughout the day, and that Detective Ashworth had no idea how the rolling bookcase and cardboard dividers were set up. Given that information, no reasonable officer would think that E.H. was at risk of meaningful injury. Moreover, no reasonable officer would think that a teacher providing one-on-one assistance to a child *knows* that her conduct is likely to injure the child's mental welfare. Although Detective Ashworth did not need to have specific evidence as to Pehush's *mens rea*, she could not ignore known, exculpatory evidence on that score. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (the officer cannot "deliberately disregard facts known to him" to find probable cause).

The remaining allegations do not render this dispute immaterial. Eating lunch later than other students and missing speech therapy and a trip to the gym is perfectly justifiable if it facilitates one-on-one work with the teacher. As to the diaper, there is a dispute regarding what Detective Ashworth knew about the grounds for Crosby's belief that E.H. did not have her diaper changed—the sworn statement reflects only that she did not see anyone check it at lunch and that it was wet at the end of the day.

In dismissing Pehush's state and federal malicious prosecution claims, the district court relied exclusively on its finding that there was no genuine dispute material to whether Detective Ashworth had arguable probable cause. On remand, it should consider whether there are genuine disputes as to the other elements of those claims. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009) ("It is our settled practice to allow the district court to address arguments in the first instance."). Since we conclude that there are genuine disputes of material fact as to whether there was arguable probable cause, we need not consider whether, under New York law, when a claim against an officer is dismissed for qualified immunity, the claim must also be dismissed against the municipality. *See Kass v. City of New York*, 864 F.3d 200, 213-14 (2d Cir. 2017); *Demoret v. Zegarelli*, 451 F.3d 140, 152-53 (2d Cir. 2006); *Hayes v. City of Amsterdam*, 770 N.Y.S.3d 138, 140 (3d Dep't 2003); *but see Verponi v. City of New York*, 31 Misc. 3d

8

1230(A) (Table), at *13 (N.Y. Sup. Ct. 2011); *Napier v. Town of Windham*, 187 F.3d 177, 191 (1st Cir. 1999); Restatement (Second) of Agency § 217.

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** for trial on the false arrest claims against Detective Ashworth and the Town of Wallkill and for further consideration of the malicious prosecution claims consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9